## THE OLUF. [1]

*(Circuit Court, E. D. Louisiana.* December, 1883.)

1. CHARTER-PARTY—DEMURRAGE.

 The words "providing for demurrage for every day, day by day," in a charter-party, are to be construed as running days, and not working days, and all days are to be counted, including rainy days, Sundays, and other holidays.
 *Lindsay* v. *Cusimano,* 12 FED. REP. 503, 504, followed.

2. SAME.

 The words "weather permitting," in the charter-party in this case, apply to the time to be taken for unloading, and not to the time of the detention of the vessel by the default of consignees.

Admiralty Appeal.

*E. H. Farrar,* for libelants.

*W. S. Benedict,* for respondents.

PARDEE, J. Libel for demurrage under charter-party, containing this clause on the subject:

"It is agreed that the lay days for loading and discharging shall be as follows, (if not sooner dispatched:) commencing from the time the vessel is ready to receive or discharge cargo; cargo to be delivered to the vessel in quantity of not less than 15,000 feet per day, and to discharge as fast as the vessel can deliver to company's lighters, weather permitting. And that for each and every day's detention, by default of said party of the second part, or agent, twenty-five dollars per day, day by day, shall be paid by said party of the second part, or agent, to the said party of the first part, or agent."

The evidence shows that the cargo could have been discharged in 10 working days had ordinary dispatch been used. And this was expressly agreed to by the agent of consignees. It is also shown and agreed that the lay days commenced September 26th, and expired October 27th, from which time the bark was detained by default of the respondents. The only question remaining is whether, under the contract, demurrage was to be paid for running days or only for working days. It seems to me that the contract is perfectly plain: "And that for each and every day's detention, * * * twenty-five dollars per day, day by day, shall be paid." The vessel should have been discharged October 27th.

As this court had occasion to say in another case:

"All delays after that date were the result of the negligence of the respondent, and whether it 'rained or shined,' was Sunday or weekday, he should pay demurrage for every day thereafter, until the ship was discharged." *Lindsay* v. *Cusimano,* 12 FED. REP. 504.

It seems that after the expiration of the lay days, and while demurrage was running, the storms were so violent at intervals that the bark was compelled to go to sea for safety, and this no less than six times; and one time the bark was kept outside some 10 days. It

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

does not appear that much of the time the bark was outside for safety could or would have been utilized for discharging; but the respondents urge that these days should, at least, be deducted from the delay for which demurrage is allowed. This claim, though plausible at first glance, cannot be allowed under the contract. The words "weather permitting" apply to the time to be taken for unloading, and not to the detention of the bark by the default of consignees. If the bark had been discharged with dispatch when the stormy season came on, she could have sailed for smoother seas and safer ports. The risks and losses she was compelled to meet to secure her safety will be hardly compensated by the allowance she will get as demurrage during that stormy season.

A decree will be entered in favor of libelant for $2,650, being demurrage for 106 days at $25 per day, with interest from December 24, 1881, with credit of $550 deposit, with interest from November 24, 1882, and for costs of both courts.

----

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.