DAVIS & HOOKS v. ATLANTIC COAST LINE RAILROAD
COMPANY.

(Filed 16 October, 1907).

1. **Railroads—Penalty—Statutes—Transport—Time Computed.**
    Under Revisal, sec. 2632, the time in which railroads shall
    transport freight shall be computed by excluding the first day
    and including the last, except when the last day falls on Sunday.

2. **Same.**
    Though Revisal, sec. 3844, prohibits freight trains from running
    on Sunday within certain hours, Revisal, sec. 2632, does not
    exclude Sundays from the reasonable time in which railroads are
    given to transport freight, except when Sunday is the last day in
    computing the time. Revisal, sec. 887. (The time allowed,
    under Revisal, sec. 2632, when not necessarily taken for the speci-
    fied purposes, discussed).

3. **Same—Intermediate Points.**
    An "intermediate point" for which time is allowed under Re-
    visal, sec. 2632, in transporting freight is only where the freight
    is transferred to another road.

ACTION for recovery of a penalty, under Revisal, sec. 2632,
heard by *Jones, J.,* at Spring Term, 1907, of the Superior
Court of WAYNE County.

From a judgment for plaintiff defendant appealed.

The facts are sufficiently stated in the opinion of the Court.

*M. T. Dickinson* for plaintiffs.
*Aycock & Daniels* for defendant.

CLARK, C. J. This is an action for penalty, under Re-
visal, sec. 2632, begun before a justice of the peace. On
appeal to the Superior Court, by consent, the Court found
the facts, from which it appears that, on 5 May, 1906, a firm
of merchants in Wilmington, N. C., shipped over defendant's
road to plaintiffs at Fremont, N.-C., a quantity of corn, less
than a carload; that Fremont is a station, ninety-six miles
from Wilmington, on defendant's line from Wilmington to
Rocky Mount; that Goldsboro, between Wilmington and Fre-

mont, is the terminus of two other railroads; that in the car in which this corn was shipped was other merchandise, which was unloaded at Goldsboro, to be transferred to said other railroads at that point; that this car arrived at Fremont 16 May; that the shipment was in possession of the defendants for twelve days, including the day of its receipt and the day of its arrival at Fremont; that two of the intermediate days (*i. e.*, 6 and 13 May) were Sundays, and that the schedule or ordinary time for the movement of freight by local train between Wilmington and Fremont is one day.

The Court below allowed the defendant to deduct five days, *i. e.*, the day of receipt of the goods for shipment, the next day (Sunday, 6th), then two more days (Monday and Tuesday) to get ready to start, and one day as the actual "ordinary schedule time" for transporting freight between Wilmington and Fremont, and gave judgment for seven days' delay, *i. e.*, one day at $12.50 and six at $2.50 each—total, $27.50.

The defendant excepted because the Court did not further deduct Sunday, 13 May; also two days (forty-eight hours) at Goldsboro, as an intermediate point; also the day of arrival at Fremont. These four days, if allowed, added to the five already allowed, would make a total of nine days for transportation of freight from Wilmington to Fremont, ninety-six miles, whose ordinary schedule is one day, as found by the Court. Ninety-six miles in nine days is more than twice the time it would take an ox cart to make the same trip. Indeed, as railroad trains, unlike ox carts, ordinarily travel by night as well as by day, ninety-six miles in nine days is less than one-half mile per hour. At twenty miles an hour, the ordinary speed of a freight train, it would have taken less than five hours, instead of the twelve days actually taken, to transport this freight from Wilmington to Fremont, which was at the actual average speed of one mile for each three hours, or eight miles for each twenty-four hours.

In *Hinkle v. Railroad,* 126 N. C., 939, it was held that

"transportation of live stock at an average rate of less than five miles an hour cannot be considered reasonable diligence, in the total absence of explanation."

The statute was passed in response to a wide public demand and a grave recognized necessity of compelling railroads to deliver freight in a reasonable time. A construction of the act that would hold that this modern, splendidly equipped, up-to-date railroad, with its line between Wilmington and Fremont almost without curves and level as a plank floor, is not chargeable with unreasonable delay if it shall take in transportation between those points more than twice as long as it would take an ox cart to make the transit, challenges attention. If the remedial statute accomplishes no more than requiring of a railroad less than half the speed of an ox cart, why was it passed? What does it remedy?

The statute (Revisal, sec. 2632) is as follows: "It shall be unlawful for any railroad company, steamboat company, express company or other transportation companies doing business in this State to omit or neglect to transport within a reasonable time any goods, merchandise or articles of value received by it for shipment and billed to or from any place in the State of North Carolina, unless otherwise agreed upon between the company and the shipper, or unless same be burned, stolen or otherwise destroyed, or unless otherwise provided by the North Carolina Corporation Commission. Each and every company violating any of the provisions of this section shall forfeit to the party aggrieved the sum of $25 for the first day and $5 for each succeeding day of such unlawful detention or neglect, where such shipment is made in carload lots, and in less quantities there shall be a forfeiture in like manner of $12.50 for the first day and $2.50 for each succeeding day: *Provided,* the forfeiture shall not be collected for a period exceeding thirty days. In reckoning what is reasonable time for such transportation, it shall be

considered that such transportation company has transported
freight within a reasonable time if it has done so in the ordi-
nary time required for transporting such articles of freight
between the receiving and shipping stations; and a delay of
two days at initial point and forty-eight hours at one inter-
mediate point for each hundred miles of distance, or fractions
thereof, over which said freight is to be transported, shall not
be charged against such transportation company as unreason-
able, and shall be held to be *prima facie* reasonable, and a
failure to transport within such time shall be held *prima facie*
unreasonable."

The statute for computing time (Revisal, sec. 887) is as
follows: "The time in which an act is to be done, as provided
by law, shall be computed by excluding the first day and in-
cluding the last.    If the last day be Sunday, it shall be ex-
cluded."

The Legislature makes the law.    The function of the
court is to apply it.    An examination of these two statutes
will show:

1. That the last day, the arrival at Fremont, is not to be
deducted unless it had been Sunday.

2. We are of opinion that Goldsboro is not an intermediate
point on the line between Wilmington and Fremont, on the same
railroad.    It would be an "intermediate" point only as to
freight transferred to another railroad at that place.    Merely
taking other goods out of the car, *en route,* at Goldsboro could
not justify a delay of forty-eight hours there, for, this being a
"local freight" train, goods are taken out or put in the car at
any station, requiring for that purpose only a few moments,
and not delaying the train nor the transportation of this par-
ticular freight, as may be the case as to freight transferred to
another line of road to be forwarded in another car.

3. The Legislature has not written the words "Sundays
excluded" into the statute, and the Court has no authority to
do so.    The Revisal, sec. 887, by providing that, in com-

puting time, if the last day be Sunday it shall be excluded, shows that, except when Sunday is the last day, it shall be counted in the time "provided by law."

The defendant contends that, inasmuch as railroads are prohibited (Revisal, sec. 3844) from running freight trains on Sundays, between sunrise and sunset, the Court ought to interpolate the words "Sundays excepted," in section 2632. The Legislature might have written those words in the statute, but it did not do so.    The courts have no power to do so. The Legislature evidently thought it had made full allowance for freight trains not running between sunrise and sunset on Sunday by the liberal allowance it has made to the railroads over and above "the ordinary time required for transporting such articles of freight between the receiving and shipping stations," which in this case is found to be *one* day.

The exact point has already been twice passed upon by this Court.    In *Keeter v. Railroad,* 86 N. C., 346, *Ashe, J.,* says that the defendant set up the defense that Sunday should not be counted, because the statute (chapters 197 and 203, Laws of 1879) forbade freight trains to run on that day, and holds that Sunday is to be counted—not excluded—in making up the time which the railroad is allowed for transportation. Said chapters 197 and 203, Laws of 1879, referred to by *Judge Ashe,* are now Revisal, sec. 3844, again brought forward as a defense by defendant.    The same ruling that Sunday (unless the last day) is to be counted was made in *Branch v. Railroad,* 77 N. C., 347.

In *Drake v. Fletcher,* 50 N. C., 411, in construing the statute which allowed twenty days in which a *ca. sa.* must be executed, the Court held that Sundays must be counted, though the statute forbade service of such process on Sunday, the Court saying that when Sundays are to be excluded "the Legislature so declares in express terms."    In *Barcroft v. Roberts,* 92 N. C., 249, the Court held, as to the twenty days allowed in which a petition to rehear could be filed, that the

first day is to be excluded from the count, and the last day is to be counted, unless Sunday, and counted all other Sundays in the twenty days.

We have numerous statutes fixing the time within which certain acts are to be done, and, though process and notices are forbidden to be served on Sunday (Revisal, sec. 2837), no court has ever written into the statute specifying the time in which process shall be served (under a penalty to the officer for failure to serve in the prescribed time) the words "Sundays not to be counted."

We also have statutes prescribing that if roads or bridges shall remain out of repair ten days the overseer is liable to a fine and an action for damages (Revisal, sec. 2724), but this has not been construed as "exclusive of Sundays," though the overseer is forbidden to do any work on Sunday (Revisal, sec. 2836), and would not have ten working days, exclusive of Sundays. There are similar penalties in Revisal, secs. 2722, 2723. Appeals must be taken in ten days, cases on appeal served in ten days, countercases in five days, under penalty of loss, yet the Court has not extended the time by writing in the statute "Sundays not counted," though lawyers are no more to be expected to work on Sundays than freight trains.

There is a severe penalty on any officer not serving process, if delivered to him twenty days before court or ten days before return day, of a justice of the peace's warrant (Revisal, sec. 2817); but, though he cannot serve such process on Sundays, they have never been excluded from the count. If a register fails to record a license in ten days he incurs a penalty. Revisal, sec. 2092. But, though he cannot legally record it on Sundays (Revisal, sec. 2836), any more than a freight train can legally run between sunrise and sunset on that day, Sundays are not excluded.

There is a penalty on clerks for not issuing executions in six weeks. Revisal, sec. 618. They cannot legally issue executions on Sunday, but it has never been held that another

DAVIS *v.* RAILROAD.

week was to be added to the six weeks because of the six Sundays included.

Many other instances might be given, but, as this Court has said, if the Legislature intends that Sundays shall not be counted, it always "so declares in express terms." *Drake v. Fletcher,* 50 N. C., 411. This is a remedial statute, in response to a public demand that *quasi* public corporations shall transport freight in a reasonable time. There is no indication that Sundays shall be excluded from the reasonable time prescribed in which railroads shall transport freight, since Sundays are counted in the time in which clerks, sheriffs, lawyers, road overseers and all others are respectively required to perform certain acts, under a penalty if they fail to do so within the time prescribed.

In the cognate matter of demurrage, as *Judge Ruffin* notes in *Branch v. Railroad,* 77 N. C., 354, Sundays are counted in the time prescribed. To the same effect is *Car Co. v. Railroad,* 121 Fed., 609; *The Oluf,* 19 Fed., 459; *Baldwin v. Railroad,* 142 N. Y., 279.

It follows, not only that none of the defendant's exceptions can be sustained, but that the Judge erred in allowing the defendant four days at the initial point, for the statute expressly allows only "a delay of two days at the initial point." Sunday, 6 May, was properly deducted, not as Sunday, but as one of the two initial days of nonaction. There was no authority to deduct two more days. This last error follows our ruling that Sundays are not excluded by the statute, but we cannot correct this error, as the plaintiff does not appeal. For the same reason, we cannot pass upon the contention, earnestly and ably made by the plaintiff, that, under the terms of the statute, "if there is a delay of two days at the initial point," or of "forty-eight hours at an intermediate point," it shall be held *"prima facie* reasonable," but that this does not mean that if there is not, in fact, such delays at those points, that length of time shall be deducted out of unreasonable de-

lays elsewhere.    The question is an interesting one, but we are not called on to decide a point not raised by any exception, the plaintiff not appealing.

In *Meredith v. Railroad,* 137 N. C., 481, this Court held that the "forty-eight hours at intermediate point" was, as the statute says, only *"prima facie* reasonable delay," and not to be allowed unless it was a necessary delay.

The statute allows the carrier "the ordinary time for transporting such articles of freight between the receiving and shipping stations," and, in addition to that, "a delay of two days at the initial point" (instead of the day of receipt, under Revisal, sec. 887), and "forty-eight hours at one intermediate point for each hundred miles of distance, or fractions thereof, \* \* \* shall be held *prima facie* reasonable." This is the plain language of the body authorized to make laws, and this Court has no desire or power to read or construe it except as it is written.    If the time allowed is too liberal, or too restricted, it is for the Legislature to change it.

Affirmed.