BROOKS MANUFACTURING COMPANY v. SOUTHERN RAILWAY COMPANY.

(Filed 27 May, 1910.)

1. Carriers of Freight—Transportation—Private Tracks—Delivery—Accessible for Unloading—Interpretation of Statutes.

Revisal, sec. 2632, penalizing a railroad company for failure, etc., to transport freight (amended so as to include delivery at destination under ch. 461, Laws 1907), does not apply, to a delivery on the private tracks of a consignee; but to avoid the penalty it is required of the carrier to place for delivery a carload shipment on its track at destination at a- place reasonably accessible.

2. Carriers of Freight—Penalty Statutes—Transportation—Intermediate Points.

In this case there was no evidence upon which the trial judge could hold that Durham was an intermediate point at which the carrier should have further time for necessary delay, under the principles announced in *Wall's case*, 147 N. C., 408, and *Davis' case*, 145 N. C., 207.

HOKE, J., concurring in result.

APPEAL from *Long, J.*, at the February Term, 1909, of GUILFORD.

Civil action to recover a penalty. The facts are set out in a special verdict and in the judgment of the judge of the Superior Court.

### SPECIAL VERDICT.

The jury upon being impaneled found the following special verdict:

"The facts in this case are found to be as follows:

"This was a shipment of a solid carload of lumber from Pittsboro, North Carolina, to Greensboro, North Carolina, consigned to the plaintiff; shipment was over the Seaboard Air Line and the Southern Railway; the Seaboard Air Line delivered this car to the Southern Railway Company at Cary, North Carolina, 13 December, 1906, at 4 P. M.; said car arrived at Greensboro, 16 December, 1906, and upon its arrival notice was given in writing to the plaintiff by the defendant by mail on 17 December, 1906; that said car was placed by the defendant at the siding of the Brooks Manufacturing Company, the plaintiff, on 18 December, 1906, at 6 P. M.; that the distance from Cary to Greensboro is 73 miles; that a reasonable time for the going of the car from Cary to Greensboro is one day of twenty-four (24) hours; this is not inclusive of any lay-over time that the defendant may be entitled to under the statute at either the initial point, Cary, or any intermediate point, to wit, Durham, if it is an intermediate point; the siding of the plaintiff is within one-quarter mile of the defendant's freight yard at Greensboro, and is connected by means of a switch with defendant's track in its freight yard at Greensboro, and there were physical connections by means of switches between the siding of the plaintiff and the track of the defendant leading from Sanford to Greensboro; the main line from Sanford to Greensboro runs within thirty (30) feet of plaintiff's siding, and the main line is connected by a switch, 175 feet from the usual place of unloading; the shipments of lumber consigned to the plaintiff shipped over defendant's road are usually placed upon this siding; 95 per cent of the same being so placed for unloading, and the other 5 per cent being placed at other points in cases where cars have been turned over to other parties by the consignee; the car in question was not placed for unloading elsewhere than on the plaintiff's siding. The main line from Cary to Greensboro connects with the Sanford line by a switch in the Greensboro freight yards of defendant company and about one-quarter of a mile from plaintiff's siding; the schedules of the freight trains from Cary to Greensboro at the time of the shipments referred to were as follows:

"Train No. 183, through freight, passes Cary at 6:15 P. M., does not stop; leaves Durham at 8:15 P. M.; arrives at Greensboro at 1:54 P. M.

MANUFACTURING COMPANY *v.* RAILROAD.

"Train No. 163, local freight, leaves Cary at 7:30 P. M.; arrives at Durham at 8:30 A. M.; this train does not go farther west than Durham, but returns to Selma from Durham.

"Train No. 107, local freight, leaves Durham at 10:24 A. M., and arrives in Greensboro at 5 P. M.

"Train No. 171, through freight, passes Cary at 10:25 P. M., but does not stop there; leaves Durham at 11:28 P. M., and arrives in Greensboro at 2:50 A. M.

"Train No. 173, through freight, passes Cary at 9:10 A. M., but does not stop there; leaves Durham at 11:20 A. M., and arrives in Greensboro at 2:10 P. M.

"That local freight trains only stopped at Cary; that the local freight ran from .Cary to Durham and there that train stopped; this train stopped at Durham and returned to Selma, North Carolina; the car was left in the yards at Durham until the next freight was made up going to Greensboro, by which train it was brought to Greensboro. There is no question as to the payment of freight by the plaintiff. This car of lumber was not assigned by plaintiff consignee."

### JUDGMENT.

Upon the foregoing special verdict of the jury, the question of law is left to the court to decide whether or not the plaintiff is entitled to recover.

The court is of the opinion that the defendant should be allowed two days at the initial point and one day as reasonable time to have transported the goods from Cary to Greensboro, North Carolina. The court is also of opinion that in view of what the Supreme Court has said in *Hilliard v. R. R.,* 51 N. C., 343, and in *Alexander v. R. R.,* 144 N. C., 95, and other cases, that the duty. of the defendant in transporting the car, at destination, was fulfilled when it brought the car and placed it in a state ready to be delivered to the plaintiff on the siding of the plaintiff in Greensboro, having physical connection with the defendant's tracks.

It is, therefore, considered and adjudged by the court, after allowing the defendant two days at the initial point and one day as reasonable time for transportation, that the car was detained in its possession for a period of two days before finishing the transportation.

It is, therefore, further considered that the plaintiff recover of the defendant thirty dollars ($30) and the cost of this action, to be taxed by the clerk.          · B. F. LONG,
                                          *Judge Presiding.*

From the judgment rendered, the defendant appealed.

*Justice & Broadhurst* for plaintiff.
*Wilson & Ferguson* for defendant.

BROWN, J. The first assignment of error is that his Honor erred in holding that the defendant was required not only to transport the car from Cary to Greensboro within the statutory period, but must within that time place the car upon the plaintiff's sidetrack.

1. We do not construe his Honor's judgment to hold exactly that, under the authority of the cases of *Hilliard v. R. R.,* 51 N. C., 343, and *Alexander v. R. R.,* 144 N. C., 95, cited in his judgment, it was the duty of the defendant to deliver the loaded car to the plaintiff on its private sidetrack. Neither of those cases sustain that position. On the contrary, the *Alexander case* expressly holds that the carrier is not penalized by section 2632 for delay in delivering the freight to the consignee after transportation ceases, and that such section does not include a failure to deliver, but only a failure to transport, "delivery necessarily requiring the concurrence of the consignee and having a distinctive meaning." Although this statute was amended by ch. 461, Laws 1907, so as to require a delivery at destination within the time specified, we have held that when the goods arrive and the carrier has notified the consignee that it is ready to deliver, it has discharged its duty. *Wall v. R. R.,* 147 N. C., 411. But this statute as amended does not undertake to compel a railway company to deliver loaded cars off its own right of way and tracks onto the private track of an individual or private corporation. Therefore, a delivery of the carload of lumber to plaintiff upon its private track, belonging to it and leading to its mill, must of necessity be a matter of agreement between plaintiff and defendant, and cannot come within the purview of section 2632. A railroad company cannot be compelled to operate its engines on a private track belonging to a private corporation or individual over which the railroad company has no control or supervision.

But whatever reasons the judge gave for his judgment, the facts set out in the special verdict sustain it. It is found as a fact therein that "the car in question was not placed for unloading elsewhere than on the plaintiff's siding."

While the defendant was under no legal obligation to haul this car off its own tracks and onto the private tracks of plaintiff, yet it was its duty to place the car in a position for unloading, so that it may be accessible for that purpose.

BROOKSHIRE *v.* ELECTRIC COMPANY.

Transportation ceases when the duty of the carrier as a warehouseman commences, and in respect to freight transported in carload lots, when the car reaches destination and is placed for unloading. *Wall v. R. R.*, 147 N. C., 408. What particular parts of the carrier's tracks and freight yards may be used for such purposes must of necessity be left to its discretion, but the car must be reasonably accessible and placed for delivery before transportation is fully ended.

2. The second assignment of error is that his Honor did not hold that Durham was an intermediate point, and did not allow the defendant any time for necessary delay there. We are unable to find in the special verdict any fact that warrants the contention that Durham is an intermediate point between Cary and Greensboro within the meaning of the statute. What constitutes such intermediate point is discussed and decided in *Wall v. R. R., supra; Davis v. R. R.*, 145 N. C., 207.

Affirmed.

HOKE, J., concurs in result.