NATIONAL ELEVATOR CO. v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.   October 6, 1917.)

No. 4795.

1. COMMERCE ⊜═89—INTERSTATE COMMERCE COMMISSION—ACTION FOR EXCESSIVE CHARGE—JURISDICTION OF FEDERAL COURT.
   Where the claim of a shipper against a railroad company to recover freight paid involves the construction of the tariff schedule, to determine what rate applied to the shipment, and not any question of the reasonableness of rates, the jurisdiction of the Interstate Commerce Commission is not exclusive, but an action may be maintained in this instance in a District Court.

2. CARRIERS ⊜═30—RAILROAD TARIFFS—CONSTRUCTION—INTERMEDIATE STATIONS.
   Tariff Circular 18A of the Interstate Commerce Commission, effective March 31, 1911, provides that a tariff shall contain an alphabetical index of the points from and to which it applies, and, further, that "this is not to be understood as prohibiting the incorporation in a tariff of a rule for the affirmative and definite application of the rates or fares named in that tariff to or from points not indexed. and which are distinctly intermediate on the same line with points that are indexed."  A tariff published by a railroad company provided that "between stations * * * rates to or from intermediate stations will be the same as shown to or from the next more distant station to or from which rates are named."  Held, that such provision must be construed in connection with the circular under which it was issued, and that it had no application to points which were indexed, and to or from which specific rates were named.

3. CARRIERS ⊜═30—TARIFFS—"INTERMEDIATE."
   In a railroad tariff, fixing rates to and from stations named, and also providing for the rates to apply to "intermediate stations," the word "intermediate" refers to stations between those named.

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action at law by the National Elevator Company against the Chicago, Milwaukee & St. Paul Railway Company.   Judgment for defendant.   Plaintiff brings error.   Affirmed

Harold G. Simpson, of Minneapolis, Minn. (Lancaster, Simpson & Purdy, of Minneapolis, Minn., on the brief), for plaintiff in error.

F. W. Root and N. J. Wilcox, both of Minneapolis, Minn., and J. N. Davis and H. H. Field, both of Chicago, Ill., for defendant in error.

Before HOOK, SMITH, and CARLAND, Circuit Judges.

SMITH, Circuit Judge.   The defendant in the District Court, which is also the defendant in error, is a corporation organized under the laws of Wisconsin, and was engaged in interstate commerce and maintained a system of railroads extending generally from Chicago, Ill., to the Pacific Coast.   The line extends from the eastern boundary of South Dakota, south of the south line of North Dakota, to a point about 100 miles east of the Montana line, and crosses into North Dakota and proceeds west to Montana.   At Andover, S. D., it has a branch which extends north into North Dakota to Harlem, about 55½

miles long. The first station south of Harlem is Cogswell, at which point the branch is crossed by the line of the Minneapolis, St. Paul & Sault Ste. Marie Railway, commonly known as the "Soo Line." Cogswell, N. D., is between 7 and 8 miles north of Brampton, N. D., and between 12 and 13 miles north of Newark, S. D., all of which are on the defendant's branch line. The plaintiff in the District Court, which is also the plaintiff in error, is a corporation organized under the laws of Minnesota engaged in buying, shipping, and selling grain, and owns and operates among others an elevator at Newark, S. D.

The complaint alleges that the plaintiff shipped 72 carloads of wheat, 4 of barley, 1 of oats, and 2 of flax seed from Newark, S. D., to Duluth, Minn.; that the defendant took and carried said grain under the agreed and lawful rates for such transportation, as shown by the published tariff of the defendant; that the company's published tariff fixed the rate for all of said shipments, except flax seed, at 14 cents per 100 pounds and upon flax seed at 15 cents for the same quantity, but the defendant compelled the plaintiff to pay 15 cents per 100 upon all said grain, except flax seed, and 19½ cents per 100 upon the flax seed; that the company extorted from plaintiff upon said shipments in excess of the proper rates the sum of $601.99 on or before the 1st day of December, 1913; that plaintiff has demanded refund of said sum, which has been refused, and the plaintiff asks judgment for $601.99 and interest, costs, and disbursements.

The answer alleges that the defendant charged plaintiff for transportation of the grain referred to its lawful tariff rates, and denies that plaintiff has ever paid more.

The parties filed a written stipulation, waiving a jury, and the cause was tried to the court, and a judgment was rendered for defendant, and the original plaintiff sued out this writ of error.

It appears the tariffs filed by the defendant, so far as material, were substantially as follows:

| From | To | Rates in Cents per Hundred Pounds. | |
|------|-----|-----------|----------------------------|
| | | Flax Seed | Wheat, Barley and Oats. |
| Cogswell, N. D. | Duluth | 14 | 14 |
| Brampton, N. D. | " | 14 | 14 |
| Newark, S. D. | " | 19½ | 15 |

Attached to the tariff is the following:

"Between stations on the C., M. & St. P. Ry. rates to or from intermediate stations will be the same as shown to or from the next more distant station to or from which rates are named."

The sole question is whether the last provision is applicable to the rates from Newark to Duluth, and thus its rates are fixed the same as from Brampton, notwithstanding the rates specifically fixed from Newark in the table.

[1] The defendant insists that the case should have been brought before the Interstate Commerce Commission for reparation, and the District Court had no jurisdiction. It is expressly stated in plaintiff's

brief that it is not claimed that the rate charged was illegal under the eighth section of "An act to create a Commerce Court, and to amend the act entitled 'An act to regulate commerce,' approved February 4, 1887, as heretofore amended, and for other purposes" (Act June 18, 1910, c. 309, 36 Stat. 539, 547 [Comp. St. 1916, § 8566]); and it may be added that there is no claim that the rates charged are in and of themselves unjust, unlawful, unjustly discriminatory, preferential, or prejudicial. The plaintiff simply contends that the general clause in question fixed the rates lower than the specific rates given; that there were two rates fixed for the same service, and the shipper is entitled to the benefit of the lower rate.

Under such circumstances, we think that the District Court had jurisdiction to construe the tariffs, and determine what rates were applicable under them to given shipments under section 9 of the act to regulate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 379, 382 [Comp. St. 1916, § 8573]), and section 22 of the same act (24 Stat. 379, 387 [Comp. St. 1916, § 8595]). Pennsylvania R. R. v. Sonman Coal Co., 242 U. S. 120, 37 Sup. Ct. 46, 61 L. Ed. 188; Penna. R. R. Co. v. Puritan Coal Co., 237 U. S. 121, 35 Sup. Ct. 484, 59 L. Ed. 867; Hite v. Central R. of New Jersey, 96 C. C. A. 326, 171 Fed. 370 (this decision was by the Circuit Court of Appeals of the Third circuit); Barrett v. Gimbel Bros., 141 C. C. A. 379, 226 Fed. 623 (this opinion was by the same Circuit Court of Appeals, and affirmed the case as reported in the District Court under the title of Gimbel Bros. v. Barrett [D. C.] 215 Fed. 1004); National Pole Co. v. Chicago & N. W. Ry. Co., 127 C. C. A. 561, 211 Fed. 65 (opinion of the Circuit Court of Appeals of the Seventh Circuit). The last two cases seem to us to be clearly in point and decisive.

The following state court cases are cited to sustain the same position: Hardaway v. Southern Ry. Co., 90 S. C. 477, 73 S. E. 1020, Ann. Cas. 1913D, 266; Kansas City Southern Ry. Co. v. Tonn, 102 Ark. 20, 143 S. W. 579; Southern Pacific Co. v. Fry & Bruhn, 82 Wash. 9, 143 Pac. 163; Western, etc., & Co. v. White Prov. Co., 142 Ga. 246, 82 S. E. 644; Eastern Ry. Co. v. Littlefield (Tex.) 154 S. W. 543; Mulberry Hill Coal Co. v. Illinois C. R. Co., 257 Ill. 80, 100 N. E. 151. But, inasmuch as this is a question of federal law, we rest our opinion wholly upon the federal cases cited. We do not mean to hold that the Interstate Commerce Commission did not have concurrent jurisdiction. Laning-Harris Coal & Grain Co. v. St. Louis & San Francisco Railroad Co., 13 Interst. Com. Com'n. R. 148; Chicago, B. & Q. R. Co. v. Feintuch Co., 191 Fed. 482, 112 C. C. A. 126. But we do hold that the District Court correctly ruled it had jurisdiction.

[2] The questions must therefore be decided whether the specific rates fixed from Newark, S. D., to Duluth, were in conflict with the general provision quoted, and whether under the general provision Newark was entitled to a lower rate, and, it being conceded that the specific rates fixed from Newark to Duluth were collected, whether the plaintiff is now entitled to recover. It will be conceded that, if the tariffs have two distinct and conflicting rates for the same shipment, the shipper is entitled to the benefit of the lower of these rates. It is

well understood that railroads accept shipments from switches and sidings not treated as stations. A solution of the questions in this case will largely depend upon what was meant by "intermediate stations," as used in the note in question.

Webster's International Dictionary defines "intermediate" as:

"Lying or being in the middle place or degree; between extremes or limits; coming or done between; intervening; interjacent; as, an intermediate space; intermediate colors. Something intermediate; a term, member, or quality intervening between others of a series. To come between; to intervene; to interpose."

The Century Dictionary defines it as:

"Come between; act as a mediator, that is, between; to act intermediately; intervene; interpose. I, a. Situated between two extremes: coming between; in either position or degree; intervening; interposed; generally followed by between when the extremes are mentioned, as an intermediate space; intermediate obstacles."

The word "intermediate" is not given a legal meaning in any law lexicon, and we have found no cases which define it in approximately the same sense here used, except Davis & Hooks v. Atlantic Coast Line R. Co., 145 N. C. 207, 59 S. E. 53; Wall-Huske Co. v. Southern Ry. Co., 147 N. C. 407, 61 S. E. 277; Brooks Manufacturing Co. v. Southern Ry. Co., 152 N. C. 665, 68 S. E. 243; Hollingworth v. State of Ohio, 29 Ohio St. 552.

There is a matter not yet stated which tends to elucidate it. Tariff Circular 18A, issued by the Interstate Commerce Commission, reissued effective March 31, 1911, provides:

"4. Tariffs in book or pamphlet form shall contain in the order named: * * * (d) An alphabetical index of points from which rates apply, and an alphabetical index of points to which rates apply, together with names of states in which located."

"34. Tariffs shall contain, in the order named: * * * Alphabetically arranged and complete index of points from which the tariff applies, and alphabetically arranged and complete index of points to which the tariff applies, together with the name of state in which located."

"64. * * * (Issued January 7, 1908.) Paragraph (d) of rule 4, and paragraph (c) of rule 34, provide that a tariff shall contain complete alphabetical indexes of the points from and to which it applies. This is not to be understood as prohibiting the incorporation in a tariff of a rule providing for the affirmative and definite application of the rates or fares named in that tariff to or from points *not indexed* and which are directly intermediate on the same line with points that are indexed."

This clearly gave authority to make such rates as prescribed in the note in question to or from points not indexed; but the points here in question, Newark and Duluth, were both indexed. "Expressio unius est exclusio alterius." In Merrill & Bro. v. I. C. R. R. Co., 36 Interst. Com. Com'n. R. 523, the Commission had before it a clause which read:

"The rate to apply from a point of origin or to a point of destination *not shown* herein which is directly intermediate with a point from or to which a specific rate is published will be the rate from or to the next more distant point from or to which a specific rate is published herein."

This was better language to convey the meaning now contended for by the defendant than that used by it in this case. The Commission, of course, held that that clause did not apply to places indexed. Conceding that that case was plainer than this one, and the language here chosen was not as clear as that chosen by the Illinois Central, we think that Newark, a point named in the tariff, was not an intermediate station within the meaning of the note.

It is notorious that the rates from the Pacific Coast to Chicago are many of them much lower than the rates over the same road from the intermountain country to Chicago. If we assume a similar note here added to the tariff from the Pacific Coast and intermountain points to Chicago under this clause, would every point where the rates are higher than they are from the Pacific Coast to Chicago be entitled to claim the Pacific Coast rates?

[3] It is manifest that the word "intermediate" refers to rates from points intermediate betweeen stations named, or intermediate between the extreme limits of the defendant's road, whether named or not. We have reached the conclusion that it refers to intermediate points between the stations named. There can be but one legal rate on a given commodity between two points. Laning-Harris Coal & Grain Co. v. Missouri Pacific Ry. Co., 13 Interst. Com. Com'n. R. 154

Plaintiff, therefore, could not recover, and the judgment of the District Court is affirmed.