GIMBEL BROS., Inc., v. BARRETT.

(District Court, E. D. Pennsylvania.  December 29, 1914.)

No. 3140.

1. CARRIERS (§ 189*)—CARRIAGE OF GOODS—RATE—AGGREGATION.

Under an express company's rule that two or more packages forwarded at the same time from the same place to the same consignee must be charged for on the aggregate weight, if a lower charge is made thereby, not all of such shipments shall be taken in making up the aggregate on which the weight is based, but only such as will result in a reduced charge because of the aggregation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 162, 854, 855, 859–865;  Dec. Dig. § 189.*]

2. CARRIERS (§ 189*)—CARRIAGE OF GOODS—RATE—CLASSIFICATION.

Where an express company had established a general tariff of charges for merchandise, tariff of rates for other classes of goods, and a commodities tariff, a provision of the commodities tariff that all classes of business not rated higher than merchandise between certain localities are put on a commodities rate applies only to those articles having a special classification, and not to articles under the general classification of merchandise, especially where such interpretation had been adopted by the carrier in making some of its charges.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 162, 854, 855, 859–865;  Dec. Dig. § 189.*]

3. INTEREST (§ 39*)—CARRIAGE OF GOODS—OVERCHARGES—TIME FROM WHICH INTEREST RUNS.

- Where a shipper has been charged an unlawful rate on his shipments, he is entitled to recover the overcharge as of the date it was collected, not

the date of the demand for refund, and should therefore be allowed interest from the former date, not as interest strictly, but to give him, on the date of his recovery, an amount equivalent to the amount of his damages at the time they were suffered.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 83–89; Dec. Dig. § 39.*]

4. CARRIERS (§ 189*)—CARRIAGE OF GOODS—RATES—TARIFF.

A provision in the commodities tariff of an express company fixing a minimum rate on all classes of business between certain localities, the charges to be graduated according to the scale on shipments under one hundred pounds, applies only to shipments of the commodities class, and not to shipments classified generally as merchandise.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 162, 854, 855, 859–865; Dec. Dig. § 189.*]

At Law. Action by Gimbel Bros., Incorporated, against William M. Barrett, as President of the Adams Express Company. On trial by the court without a jury. Judgment entered for plaintiff.

See, also, 215 Fed. 1004.

Morton Z. Paul and Wm. A. Glasgow, Jr., both of Philadelphia, Pa., for plaintiff.

John L. Evans, Wm. B. Linn, and Thomas De Witt Cuyler, all of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This case was tried by the court without the intervention of a jury under the provisions of Revised Statutes, §§ 647, 649. The case can be disposed of on special findings of fact and the conclusions of law to be drawn therefrom. The facts have been found and conclusions drawn, and are specifically stated. A few general findings are, however, necessary or at least helpful to an understanding of the special findings.

## Discussion.

The plaintiff conducts a large department store business in the city of Philadelphia. The defendant does an express business. So far as affects this case, the dealings of the parties concern only shipments from New York City to the plaintiff in Philadelphia. We are also further concerned only with packages forwarded at the same time by different shippers to the plaintiff as consignee. The case still further narrowed concerns only the proper charges for the shipments thus made. It is, of course, obvious to any one that it would be impracticable for an express company to formulate a tariff of charges which would show a specific charge on every one of the different articles or kinds of traffic which are sent by express. The tariff as filed may be roughly characterized as showing a general merchandise rate, together with classifications of different kinds of merchandise. These are supplemented by rules in the nature of exceptions, provisions for special conditions and for special services or elements of risk. The general method or system of rate charges can be best expressed by an illustration of their practical application. In determining the charge to be made, the agent, having learned the

character or kind of shipment, would refer to the classification sched-
ules. If the articles to be shipped were there found, this would de-
termine the charge to be made. If the subject of the shipment was
not there found, the charge to be made would be determined by the
general merchandise rate. The merchandise rate, so far as affects this
case, was 75 cents per 100 pounds. This was not, however, absolutely
a proportionate rate, because it was modified by a graduated scale of
charges according to weight, where the weight of the package was
under 100 pounds. The apportionment of charges to packages of
different weights was arbitrary, in the sense of packages of different
weights not being charged proportionately to the respective weights.
In consequence, a package of light weight might pay a rate per pound
five or six times the proportionate rate paid by a package nine or ten
pounds heavier. It was only when the package reached 100 pounds in
weight that the 75-cent rate became applicable as an actual propor-
tionate rate. Above 100 pounds the graduated scale did not apply,
and packages really paid proportionately to their weight. Out of
these conditions it is evident would arise this very practical situation.
If goods were shipped to a consignee in ten 10-pound packages, he
would pay the graduated charge on each package, which might amount
to as much as $4. If they were shipped in one package, the express
company would collect only 75 cents. If the packages were of a less
weight, the disproportion might be even greater. It is further evident
that such a condition afforded room and presented the promise of
gain from a manipulation of the manner of shipments. Possibly be-
cause of this the express company incorporated in its system of
charges the feature of what is called "aggregating" weights. Express-
ed in a general way, the thought is that the express company will
charge for a number of packages as if they had been bulked in one
package. Thus was brought into being the rule with which we are
concerned, which contains the added thought that it is to be applica-
ble only when it results in a decreased charge.

Out of this rule has sprung one of the questions to be determined
in this case. In addition to the merchandise tariff referred to, the
company has also what is termed a commodities tariff. The general
purpose of having a commodities tariff, in addition to or distinct from
the merchandise tariff, is this: The business of express companies
includes the shipment of some things which are cheaper in price and
bulkier than other shipments. These cheaper and bulkier things
would not stand a rate of charge which would not be undue for the
more valuable and less bulky kind of merchandise. Out of this dif-
ference came the necessity for a commodities tariff. Usually the rate
on commodities would be a lower rate than on merchandise, although
this would not necessarily or in every instance be the result.

Rule No. 7 of the regulations of the Interstate Commerce Commis-
sion provides that where there is a commodity rate which is applica-
ble to an article which is the subject of the shipment the commodity
rate is to govern, and that the naming of a commodity rate on any ar-
ticle or "character of traffic" takes such article or such traffic en-
tirely out of the merchandise class, so that nothing in the tariff relat-

ing to merchandise is thereafter applicable to it. The commodities tariff contains a provision that the minimum charge on all classes of business between (among other localities) New York and Philadelphia is to be 75 cents per 100 pounds, the charges to be graduated according to the scale on shipments under 100 pounds. There is a further schedule of the commodities tariff which includes in the classifications "all classes of business not rated higher than merchandise" between New York and Philadelphia, and these are put on a commodity rate of 75 cents per 100 pounds, subject to the graduated scale of charges on less than 100-pound weights.

This rough outline of the facts is sufficient to present the questions which are raised by the plaintiff's case and by the defense. The case for the plaintiff is in brief that the defendant by failing to apply, or at least to fully apply, the "aggregating" rule, has overcharged the plaintiff. To make an inquiry into all the shipments and the charges made therefor, in order to determine in what instances an overcharge had been made, and, if any, the amount, would be a task of some magnitude. To save us the labor involved in this, counsel (and for this they are to be commended) agreed to take the transactions of certain dates to illustrate the whole course of the dealings between the parties, and further agreed upon the amount of the overcharges on the shipments of the typical day and on the total shipments based upon the proposition that the plaintiff's construction of the aggregating rule was the correct one. It was further agreed that all the shipments made by the plaintiff were shipments of merchandise, and were all merchandise to which a rate of 75 cents per 100 pounds, subject to the graduated scale of charges on all shipments under 100 pounds applied. It was further agreed that an aggregating rule, such as rule 9 hereinafter quoted, was in force as to all shipments of merchandise during the time of the shipments involved in this case. The real issues between the parties were and are that the plaintiff claims that the proper charges should have been determined in accordance with the merchandise rate, including the aggregating rule feature as herein later discussed.

There are three defensive positions taken. One is a denial that the plaintiff's construction of the aggregating rule is the correct one. Another is that these shipments, although primarily merchandise, and, if there had been no commodities tariff, would have moved under the merchandise rate, had been withdrawn from the merchandise class to the commodities class, and in consequence the proper charge was to be determined, not by the merchandise rate, but by the commodities rates and the tariff provisions relating thereto. The third is that the questions raised here are properly to be determined, not by a resort to the courts, but by an application to the Interstate Commerce Commission.

An examination of the shipments made on April 25, 1908, which was agreed to be a typical day, disclosed that the express company collected a certain sum. This amount was arrived at by charging on the packages less than 100 pounds in weight the graduate scale charge and for those of 100 pounds or more at the rate of 75 cents per 100

pounds. The plaintiff was not given the benefit of the reduced charge which would have resulted from bulking a number of packages and charging as for one package, except in those instances in which the packages came from the same shipper. The plaintiff contends that the "aggregating" should not have been limited to packages all of which came from the same shipper, but should have been extended to packages from different shippers. Furthermore, all the packages should not be aggregated, unless the consequence was to lower the charge. If the result of aggregating all was not to reduce the charge, then such and so many must be selected and aggregated as would produce this lessened charge result.

The claim of the plaintiff rests for its foundation upon this "aggregation" of shipments. This is provided for in clauses "a" and "b" of rule 9. These are as set forth in the special findings. Clause "a" requires the actual weight of each package to be entered on the waybill, and further requires that packages forwarded by one shipper must be charged for on the aggregate weight. This is not the actual or absolute total weight, because packages under 20 pounds in weight are to be entered in the footing of the total weight as if they actually weighed 20 pounds. This clause of the rule was observed by the defendant in its charges, and therefore does not figure in the present controversy. Clause "b" may be stated to be a modification or extension of clause "a," in that it is not confined to shipments by the same consignor to the one consignee, but is extended to shipments from more than one consignor to the same consignee. It further provides that where the rate (as is the case here) is less than $1.50 per 100 pounds then the aggregation" charge shall not be more than where the rate is $1.50. We are therefore relegated to the part of the rule which relates to shipments to which the $1.50 rate applies. This part of the rule provides that two or more shipments to the same consignee, whether made by one or more than one shipper, must be charged for on the aggregate weight, if a lower rate is made thereby.

In this general statement we have ignored all the features of the rule, except only that one which bears upon the controversy, and in presenting the controversy we will also ignore or pass over all the other defenses in order to present this one point. We do this for the reason that, if the decision upon this point is adverse to the plaintiff, the other defenses need not be considered. The point now under consideration is presented with all the practical effects of a case stated. We are not called upon, or indeed at liberty, to inquire what the proper charge for shipments on the typical day was, because it has been stipulated that if the plaintiff's construction of rule 9 is the correct construction then the parties agreed that there was an overcharge of $1.12 for that day, and a total overcharge of $1,108.42 in all.

[1] This brings us directly to the question of the correctness of plaintiff's construction of rule 9, it having been further agreed that this rule, as found by the special findings, was in force and applicable to all the shipments. To pass intelligently upon plaintiff's construction of the rule we must know what that construction is. Narrowed to its controversial features, it is this:

1. Under clause "b" shipments are to be aggregated, without regard to whether they come from one consignor or more than one.

2. In determining the aggregate weight, all the shipments need not be taken, but only such may be selected and aggregated in whose aggregation, or as a result of whose aggregation, the charge which would be otherwise made is reduced. This thought may most clearly be presented by an example. Take 20 packages, the charge for which unaggregated would be $5. If the whole 20 were aggregated, the charge would be $6. If 19 or a less number were aggregated, and the others not, the charge would be $4.50. Plaintiff contends for the construction that the 19 or less packages should be aggregated, and a charge of $4.50 made. The first impression received before the rule is closely considered is against this construction. It seems at first sight to be a forced construction, and to involve a complexity which could never have been intended to be incorporated in a working rule of charges. A little reflection, however, brings to light the thought that the express companies may have had a very good reason for incorporating this feature in their system of charges, and a consideration of the language they have employed makes clear that they have incorporated it, whether they had a motive for so doing or not.

This construction is based upon the propositions (which in turn are based upon the phraseology of the rule): First, that the aggregating must be done only, in the language of the rule, "if a lower charge is made thereby"; and, second, in the like language of the rule that "two or more packages" must be aggregated. From these phrases spring the argument that it was the intention of the rule to diminish and not to augment charges, and the rule in its application is made imperative only in the event of such lessened charge result. When, therefore, the rule further incorporates the phrase that "two or more packages" must be so aggregated, the implication is irresistible that it was intended to require a selection, in order to bring about the intended result. If this were not so, these words would not have been used, and would have been omitted. It is reasonable to assume that the quoted phrase has a function, and the evident one is to incorporate the idea of a selection from among the whole number of packages, in order to accomplish the result intended. No more apt words could have been chosen to express this idea, except, perhaps, to have used the phrase "any two or more." We feel constrained to give this meaning to the rule.

[2] This brings us to the consideration of the other defenses urged. The second defense rests upon the two provisions of the commodities tariff already referred to. There are several of these provisions, but they are substantially identical. To give effect to them, it must be held that all traffic not rated higher than merchandise between Philadelphia and New York has been taken out of the merchandise tariff and transferred to the commodities tariff, or it must be held that the minimum charge provision in the commodities tariff applies also to the merchandise tariff. We do not understand the defendant to take the latter position, and will therefore confine ourselves to the former. It is clear, after any article has been transferred to the commodities tar-

iff, or when any character of traffic to which the article belongs has been so transferred, the effect is to bring it about that the charges upon that article are to be determined by the commodities tariff, and the commodities tariff alone, as fully as if the merchandise tariff was not in existence and the rules relating thereto had never been promulgated. The question involved here is therefore brought down to the single question of whether shipments of every kind between Philadelphia and New York have been so·transferred to the commodities list.

We are unable to follow the argument for the defendant to the conclusion reached that, because merchandise under the merchandise tariff is not rated higher than "mdse.," therefore all shipments between New York and Philadelphia are included in the phrase "all classes of business not rated higher than mdse. in official express classification I. C. C.," etc. There are two classifications. There are classes of business and "character of traffic" classified under the commodities tariff. There is a like similar classification under the merchandise tariff. The language quoted from the commodities tariff, upon which counsel for defendant relies, must be confined to either the classification referred to in the commodities tariff, or at most the classification referred to in either the commodities tariff or the merchandise tariff. It is not to be taken as referring to unclassified merchandise. If such had been its meaning, the thought could have been expressed in a much simpler way and in plainer terms. The effect of the construction which we are asked by the defendant to give to the quoted clauses in the commodities tariff would be to repeal all the provisions of the merchandise tariff so far as affects traffic between New York and Philadelphia.

With respect to the minimum charge feature in the commodities tariff, we are constrained to hold that this relates to commodities and not to merchandise. We feel confirmed in these views by the further fact that rule 9 as an aggregating rule was as to clause "a" applied by the defendant of its own motion, thus evidencing its own interpretation of the clauses referred to so far as the application of rule 9 is involved, as rule 9 would have no application if defendant's present interpretation of the clauses quoted from the commodities tariff were the true one. There is further confirmation afforded by the fact that the defendant's tariffs specifically apply the aggregating rule to certain localities, and that they from time to time enlarged and confined these localities, by including and withdrawing certain places. from the localities to which the rule did apply.

The third defense, that the court is without power to consider the subject-matter of this controversy, for the reason that it is one within the scope of the exercise of the administrative functions of the Interstate Commerce Commission, we have aready considered and passed upon in the motion made at the inception of this case to dismiss for want of jurisdiction. We adhere to the view then expressed.

[3] This leaves as the only undisposed-of question in the case that of interest. The question arising here was argued as one of whether interest should be calculated from the time of payment or from the date

of the demand for recoupment. The question is really one of the assessment of damages, and becomes a question of a charge of interest only by way of analogy, because of the fact that whenever the damage results from the withholding of money it cannot exceed the value of the use of that money, and by reason of this the limit of the measure may be said to be interest. In all damage cases the damages are to be assessed with reference to the time when the damage was suffered, and when the adjustment takes place at a later date the assessment is to be made as of the earlier date, with the lapse of time between that and the later date in mind. Strictly and technically, interest is not allowed from the date of damage suffered to damage assessed, but a sum is allowed for damage on the day the damage is assessed, which is the equivalent of a less sum allowed on the day the damage was suffered. Practically, however, it is the equivalent of interest.

We think the present case to be within that general rule, and that the damages should be assessed as of the date when the money was unlawfully (as is found) collected from the plaintiff, with the lapse of time as an element of damage. This date by stipulation is November 10, 1908.

The earnestness and zeal with which the very able counsel for defendant have pressed their views call for a more extended reference to certain phases of their argument, at the cost of giving perhaps undue length to this opinion.

The analysis made by them of rule 9 we believe to be correct, but we do not follow them to the conclusion that the aggregation is to be of *all* and not of "two or more" of the shipments. Had "all" been intended, the words "two or more" would not have been used. Moreover, we are not in accord with the construction which counsel for defendant have placed upon the stipulation entered into. We do not have at hand the means of verifying the calculations made, nor would we feel at liberty to correct them, even if thought to be erroneous. We certainly cannot extract from the stipulation the meaning which is ascribed to it, to wit, that judgment is to be entered for defendant, unless the court finds an overcharge of $1.12 on the shipments of April 25, 1908. As we read the stipulation, it is, as has already been said, in the nature of a case stated. If the court is of opinion that plaintiff is right in construing rule 9 to mean that any "two or more" shipments resulting in a lessened charge may be aggregated, and that all the shipments need not be aggregated, then $1.12 may be assumed by the court as the correct amount of the overcharge for April 25, 1908, and $1,108.42 the correct amount of the total overcharge. We assume this branch of the argument to be based upon the proposition that the plaintiff has given the wrong construction to the rule, and therefore judgment should go for defendant. We so understand defendant's position, because to ask us, while agreeing to plaintiff's construction of the rule, to find that the $1.12 overcharge should be reduced by the court to 75 cents, and then to enter judgment under the stipulation for the defendant, because the calculation of $1.12 agreed upon is wrong, would be to do violence to the agreement.

The vice in the "commodities" argument of the defendant is to be discovered in the first of their three unanswerable propositions as laid down on page 9 of their original printed brief. The second of these propositions, to the effect that any article or character of traffic upon which a commodity rate is placed is ipso facto taken out of any classification in which it may have been included, and that thereafter only the commodity rate is applicable to such article or character of traffic, has already been found. It is, however, a far cry from this to their third proposition, that they had "collected the appropriate graduate charges" on the plaintiff's shipments. In the first place (although this is of no importance), this "appropriate graduate charge" must be construed to exclude the aggregating of charges under rule 9, clause "a." The defendant in fact, in making up this "appropriate graduate charge," aggregated all shipments from the same consignor made to the one consignee at the same time. If the "commodities" argument they are now making be sound, this they were wrong in doing. The present argument compels this admission, and, as we understand the position of counsel, the acknowledgment of error is unreservedly made. In the second place (and this is of importance), before the plaintiff's shipments are subject to the 75 cents per 100 pounds commodity rate, those shipments must be brought within the commodity ratings, not merely be assumed to be there. It is, of course, true that as the subject of these shipments was merchandise, and when it moved as merchandise it moved under the merchandise rate, it was "not rated higher than merchandise."

The real question is: Does the expression "all classes of business * * * in the official express classifications" referred to include unclassified merchandise? As we understand the general scheme, both of the merchandise tariff and of the commodities tariff, a general merchandise rate is adopted. Classifications are then made, and specific articles of shipment set forth, so that the proper charge may be made upon any article. The basis of charge is always the merchandise rate. The rate upon any class may be determined because in that classification is shown how this may be found from a given merchandise rate per a given quantity. The rate on specific articles may in their turn be figured, as well as the class rate ascertained. It may, of course, be said that in a sense all merchandise is classified, because, if unclassified, it goes under the flat merchandise rate, and may therefore be said to be classified as merchandise. Even then, if analogous to a class which pays higher than the merchandise rate, it is rated as in that class. Everything, therefore, directly or indirectly, has applied to it the merchandise rate. The commodities rate is necessarily grafted upon it, and as soon as the commodity rate attaches to an article or character of traffic the merchandise tariff as to that article or character of traffic is annulled. If, therefore, all merchandise which pays the merchandise flat rate is transferred to the commodities tariff, the so-called merchandise class is wiped out.

The correct view would seem to be this: A general merchandise rate is established for everything. Shipments are then classified, and a charge (usually a higher one) fixed for the different classes and specif-

ic articles enumerated. All articles not so classified or named, and not analogous to any so classified, remain unclassified and pay the flat merchandise rate. Certain articles or a certain character of traffic may then be transferred to the commodities class, and a charge (usually a lower one) is fixed for it as a commodity. The provisions of the merchandise tariff then no longer apply to it. It is clear, therefore, that there may be "classes of business in the official express classifications" which pay more than the "mdse." rate, some possibly which pay the same, and again possibly some which pay less, as well as unclassified business, which moves as merchandise and pays the merchandise rate. It further follows that, when "all classes of business not rated higher than 'mdse.' in the official express classification" are bodily transferred to the commodities class, the transfer must be taken to include all the classified, but does not include the unclassified, merchandise. To view the unclassified merchandise as classified, because it is in the unclassified class is polemical jugglery. We may admire the skill displayed, but we cannot accept the apparent results as real.

[5] The conclusions reached may be restated as follows:

1. The shipments with which we are concerned were admittedly merchandise to which the 75-cent rate and the aggregating rate applied, and they moved as merchandise unless they had been transferred to the commodities tariff, and they were not so transferred unless they were transferred by the provision which brings "all classes of business" not rated higher than the 75-cent rate into the commodities class.

2. These shipments, not being of any of the classes of business enumerated in any of the express classifications, but being merely unclassified merchandise, were not brought under the commodities rating.

3. The minimum charge provision of the commodities tariff can clearly only have reference to shipments of the commodities class. It is in consequence disposed of by the finding that these shipments were not commodities.

We see nothing in the presentation of plaintiff's case which should induce us to change the views expressed when the case was presented through the pleadings upon the question of the authority of the court to hear and decide this cause. If anything, the soundness of the opinion then given is vindicated by the course of the trial. This case is now in effect, as has already been twice observed, nothing more than a case stated, and the question to be decided is one of pure law  To say that the jurisdiction of the court is ousted because the meaning of a ruling by the Commission is involved is to take away in such cases all original jurisdiction over overcharges by common carriers from the courts and leave to them only their appellate jurisdiction. The argument that whether these shipments were merchandise or whether they were commodities is an administrative question, for the determination of the Commission, has no basis for its support. The question is a very different question from that of whether railroad ties are "lumber." The Commission has nothing to do with the question of whether a certain article goes under the commodities rating as an administrative question. The question is determined by the meaning of the tariff provisions and the interpretation of the meaning of the tariff in this respect is a

judicial question, whether it be passed upon by the Commission or by the courts.

Judgment is entered in favor of the plaintiff and against the defendant for the sum of $1,516.32, besides costs of suit.

The request for findings of fact and conclusions of law, not incorporated in the findings as found and conclusions as stated, are denied. With respect to the second finding of fact, the finding that the shipments in this case moved as merchandise is to be understood as an inference of fact following and supported by the conclusion reached that these shipments were not put into the commodities class by the transference of "all classes of merchandise," etc.

### Findings of Fact.

1. During the period to which the claim of the plaintiff relates the merchandise rate on all shipments of merchandise between New York and Philadelphia was 75 cents per 100 pounds, the charges on packages weighing less than 100 pounds being apportioned, however, not according to weight, but following a graduated scale of charges apportioned from 1 pound to 100 as marked on the scale.

2. The shipments to which plaintiff's claim relates moved as merchandise under the merchandise rate between New York and Philadelphia.

3. The Adams Express Company Official Gazette and the same company's exceptions to official express classification and local and joint commodity tariff and supplements applying between New York and Philadelphia, as set forth in defendant's request for findings of fact from 3 to 12, both inclusive, were duly filed with and accepted by the Interstate Commerce Commission as the schedules showing rates and charges for transportation of commodities required by the acts of Congress.

4. The defendant in like manner filed "Official Express Classification No. 21," as shown in Plaintiff's Exhibit No. 5, containing, among other things, as follows:

"Rule 9. Aggregating Weights. (a) Two or more packages forwarded by one shipper at the same time to one consignee at one local address must be charged for on the aggregate weight; provided that any of the packages weighing less than 20 pounds each shall be estimated and charged for as weighing 20 pounds each; and provided, further, that a lower charge is made by such aggregation. Actual weight of each package must be entered on the waybill."

See Exception "b."

"(b) Exception. Where the merchandise rate per 100 pounds is $1.50 or more, two or more packages forwarded, with charges to collect, by the same company from the same city or town on the same date to one consignee at one local address, whether from one or more than one shipper, or two or more packages forwarded with charges prepaid by the same express company on the same date by the same shipper to one consignee at one local address, must be charged for on the aggregate weight; provided, that any of the packages weighing less than 20 pounds each shall be estimated and charged for as weighing 20 pounds each, if a lower charge is made thereby. Where the rate is less than $1.50 per 100 pounds, the aggregate charge on shipments from more than one shipper to one consignee, forwarded from the same point on the same date, must not be more than where the rate is $1.50 per 100 pounds."

5. Defendant applied to the shipments covered by the claim in this case the aggregating provisions of the above rule 9, clause "a," relating to packages shipped by one and the same consignor, but did not apply the provision in clause "b" of the same rule providing for aggregating shipments by two or more different consignors.

6. Rule 9, including clauses "a" and "b," was in effect and applicable to all the tariffs in force during the time within which the shipments referred to in plaintiff's claim were made.

7. The defendant filed tariffs on October 26, 1911, and January 1, 1912, providing that shipments originating with the company in certain designated localities (in all cases including the borough of Manhattan), excepting designated municipal districts, would be aggregated in accordance with rule 9, clause "b," of the Official Express Classification, and made changes therein respecting the excepted municipal districts, but retaining the aggregating feature.

8. So far as it is a question of fact, the defendant is a common carrier, subject to the provisions of the acts of Congress relating to interstate commerce.

9. The total overcharge collected by defendant of the plaintiff was the sum of $1,108.42 on November 10, 1908, and the damages are assessed at $1,516.32.

## Conclusions of Law.

1. The court has authority to try this case and enter judgment against the defendant for the damages sustained by the plaintiff.

2. Under the facts in this case, the defendant is a common carrier, subject to the provisions of the acts of Congress to regulate interstate commerce.

3. Clause "b" of rule 9 of the Official Express Classification is applicable to the shipments involved in this case.

4. Under rule 9, any two or more shipments made at the same time, although by different shippers, may be selected from the total number of shipments, and must be aggregated under the provisions of rule 9, if a less charge is made thereby.

5. Under the facts of this case, selected shipments should have been aggregated, resulting in a less charge than that made by the defendant to the amount of $1,108.42.

6. Under the facts of this case, the Official Gazette schedules and provisions relating to commodities are not applicable to the shipments involved in this case.

7. Under the facts of this case, the damages are to be assessed as of the date of November 10, 1908.

8. The plaintiff is entitled to judgment for the sum of $1,516.32, with costs of suit.