## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY ET. AL. *v.* J. F. HASTY & SONS, ET AL.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 178. Submitted January 21, 1921.—Decided February 28, 1921.

1. Where a case in the District Court arising under the Constitution has been reviewed by this court under Jud. Code, § 238, this court retains jurisdiction to review a supplementary decree of the District Court not directly involving any constitutional question. P. 254. *Arkadelphia Co.* v. *St. Louis Southwestern Ry. Co.*, 249 U. S. 134.

2. A tariff giving special rates on rough wood material on shipment to mill, on condition that certain percentages of it by weight should be shipped over the same line after manufacture, and which specified as rough materials "Rough Lumber, Staves, Flitches, Bolts, and Logs," and among finished materials "Staves and Heading," *held* applicable to "bolts" out of which barrel headings were made, the term "bolts" in this connection having a loose generic meaning. *Id.*

3. Where the meaning of such a tariff was plain, *held* that an application for a construction by the state commission by which it was promulgated was not necessary for enforcement of a shipper's rights under it. P. 256.

Affirmed.

The case is stated in the opinion.

*Mr. George A. McConnell* and *Mr. John M. Moore* for appellants.

*Mr. W. E. Hemingway, Mr. George B. Rose, Mr. D. H. Cantrell* and *Mr. J. F. Loughborough* for appellees.

Mr. Justice Pitney delivered the opinion of the court.

This case is a sequel of *Allen* v. *St. Louis, Iron Mountain & Southern Ry. Co.*, 230 U. S. 553, and *Arkadelphia Co.* v.

*St. Louis Southwestern Ry. Co.,* 249 U. S. 134.   See also
*St. Louis, Iron Mountain & Southern Ry. Co.* v. *McKnight,*
244 U. S. 368.   The Arkansas Railroad Commission hav-
ing in June, 1908, adopted Standard Distance Tariff No. 3,
establishing maximum intrastate freight rates, the present
appellant railway company attacked its validity in a suit
brought against the Commission in the United States Cir-
cuit Court for the Eastern District of Arkansas, contending
that the rates were non-compensatory and therefore
violative of the "due process of law " clause of the Four-
teenth Amendment.   A temporary injunction was issued
and continued in force until May 11, 1911, when the Cir-
cuit Court entered a final decree making the injunction
permanent, and discharging the surety from further lia-
bility on the injunction bond.   On appeal to this court
the decree was reversed June 16, 1913, with directions
to dismiss the bill without prejudice, and for further pro-
ceedings in conformity with the opinion and decree of
this court.   230 U. S. 553.   Upon the going down of the
mandate the United States District Court (successor
of the Circuit Court) entered a decree in obedience thereto,
at the same time making a reference to a special master
for the purpose of ascertaining the claims of intervening
shippers for refund of the difference paid by them in
freight rates between those prescribed by the Commission
and the higher ones maintained by the railway company
during the pendency of the injunction.   Under this refer-
ence the present appellees J. F. Hasty & Sons presented
a claim based upon the difference between rates charged
on rough material transported from forest to milling
points and the rates provided in the commission tariff on
such movements.   That tariff contained maximum rates
on such lumber applicable generally, and in addition pro-
vided for a "milling-in-transit privilege," by fixing certain
"rough material rates " lower than the others, conditioned
upon a specified percentage of the manufactured product

being shipped out on the same line that brought in the
rough material. The railway company excepted to the
claim on two grounds, (a) that the rough material rates
were discriminatory, and (b) that they were not appli-
cable to the shipments of Hasty & Sons because these
constituted interstate commerce and hence were not
subject to the Commission's rates. The District Court
sustained both exceptions. The resulting decree so far
as adverse to Hasty & Sons was reversed by this court
(249 U. S. 134, 147–152), and the cause remanded for
further proceedings in conformity with our opinion.
Upon the going down of this mandate there were further
hearings before the referee and the District Court upon
the claim of Hasty & Sons and claims of the same type
presented by three other intervening shippers; and from
the resulting decree in their favor the present appeal is
taken. Although the only question immediately involved
is the proper construction of the Standard Distance
Tariff, we have jurisdiction, as we had in the *Arkadelphia
Case, supra,* because the decree is but supplementary to
the main cause—bringing to effective conclusion, if not
vitiated by error, the controversy that arose out of the
railway company's attack upon the rates on constitutional
grounds—and hence must be regarded as involving the
construction and application of the Constitution of the
United States, within the meaning of § 238, Judicial Code.
See 249 U. S. 140–142.

     The disputed claims are based in the main upon alleged
overcharges on rough material shipped over appellant's
road to the respective mills of appellees, and there manu-
factured into heading for barrels. The question is whether
Item 79 of Distance Tariff No. 3 provided a rough-mate-
rial rate for heading. It reads as follows:

     "Item 79. Rough Material Rates.

     "(a) Rough Material Rates applicable on Rough
Lumber, Staves, Flitches, Bolts, and Logs, car loads,

between all points in Arkansas, minimum weight. . . .

[Here follows a table of rates graduated according to distance.]

"(b) The above named rates are conditional upon the manufactured product being reshipped over the same line bringing in the rough material, and may be only used subject to the following conditions: The proportion of the tonnage of outbound manufactured product to the tonnage of in-bound rough material shall not be less than the following: . . . .

[Here follows a table of percentages applicable to various products; among them:]

. "Finished Staves, 40 per cent. of weight of rough staves.

. . .

"Staves and Heading, 30 per cent. of weight of bolts."

At the hearing before the master it was admitted that the claimants shipped out over the line of road that brought in the rough material the requisite percentages of manufactured product in the usual course of business; nevertheless, appellant objected to the allowance of the claims, on the ground that Item 79 provided no rate on in-bound rough heading but the same was covered by Item 41, and since the general rates provided therein were higher than those actually charged, there was no basis for a refund. The objection was renewed in an exception to the master's report and urged at the hearing before the court on the report and exceptions. The master found that rough heading was covered as rough material in Item 79, and the District Court sustained that conclusion.

Appellant's contention is based upon a literal reading of the opening sentence of Item 79: "Rough Material Rates applicable on Rough Lumber, Staves, Flitches, Bolts, and Logs," etc.; and since "rough heading" is not mentioned here, while the associated material "staves" is specified, it is contended that rough heading is not provided for.

From the testimony taken before the master it would appear that the raw material from which barrel heads are made is variously described as rough heading, sawed heading, split heading, and bolts or heading bolts; but it also appears that, whatever may be the distinctions, the terms are used loosely and indiscriminately in the trade and in billing shipments, material of either description being considered rough material, and all having been handled by the railway company under the rough-material rate on its own schedules, without regard to particular terms.

We regard appellant's reading of Item 79 as altogether too narrow. The scope and effect of the rough-material rates should be determined not by regarding the opening sentence alone, but by looking also to the list of finished products to be manufactured from the material, and considering the general purpose of Item 79. In the table of percentages, there are specified "Finished Staves, 40 per cent. of weight of rough staves," and "Staves and Heading, 30 per cent. of weight of bolts." The purpose is manifest to give the benefit of the milling-in-transit rate to rough material out of which heading is manufactured, and no reason appears for limiting it to material of a particular description. The word "bolts," used in connection with staves and heading, should be taken not as confining the privilege to rough material of a particular form, but in the generic sense in which it is employed in woodworking, as meaning: "A mass of wood from which anything may be cut or formed" (Century Dict.); "A block of wood from which something is to be made; as, a shingle-bolt; a stave-bolt" (Standard Dict.); "A block of timber to be sawed or cut into shingles, staves, etc." (Webster's Dict.)

The matter is so free from doubt that there is no occasion to apply to the Commission for a construction, as insisted by appellant under *Texas & Pacific Ry. Co.* v. *American Tie Co.,* 234 U. S. 138, 146.

*Decree affirmed.*