(112 So. 323)

## W. L. SHEPHERD LUMBER CO. v. ATLANTIC COAST LINE R. CO.   (3 Div. 770.)

Supreme Court of Alabama.   March 24, 1927.

Rehearing Denied April 21, 1927.

**1. Commerce ☞89(5)—State court has jurisdiction of action to recover freight overcharge resulting from application of wrong rate, without first resorting to Interstate Commerce Commission.**

State court has jurisdiction of action against carrier to recover overcharge on freight shipment, involving only question of fact relative to lawful and prescribed commission rate and not the reasonableness of the rate or an administrative discretion, without first resorting to the Interstate Commerce Commission.

**2. Carriers ☞79, 189—Carrier, in absence of specific routing, must ship by cheapest and most available route and charge lowest applicable rate.**

When there is no specific routing by shipper, it is the duty of carrier to ship by the cheapest and most available route and charge the lowest rate that has application to such shipment.

**3. Carriers ☞79, 189—Shipper failing to specify route in diversion order is entitled to have shipment moved by cheapest available route and lowest applicable rate.**

Where shipper, on requesting diversion of shipment, did not specify route, but merely asked diversion and delivery on basis of through rate, it was entitled to have shipment moved by cheapest available route and at lowest rate that applied thereto.

**4. Carriers ☞79—Any reasonable routing to point as to which tariff contains no restriction is permissible.**

Where tariff contained no restriction on routing to certain point, any reasonable routing to that point, though not the most direct, is permissible.

**5. Evidence ☞518—Expert familiar with professional or expert terms of tariff may decipher them.**

An expert familiar with the construction of professional or expert terms employed in a tariff may decipher such terms.

**6. Contracts ☞155—Terms of contract open to construction will be construed against party drawing contract.**

If terms of contract are open to construction, it will be construed most strongly against party who drew contract.

**7. Carriers ☞79—Carrier issuing its own exchange bill of lading on diverting shipment is bound by such contract.**

Where carrier on diverting shipment failed to rely on rule giving right to refuse to divert and merely act as plaintiff's agent in securing bill of lading, but instead issued its own exchange bill of lading, it was bound by new contract, and other contrary or equivocal terms of original contract, if more favorable, were waived thereby.

**8. Carriers ☞202—Shipper may recover overcharge from carrier with whom he made contract without concern as to subsequent enforcing of ultimate liability.**

Shipper may recover overcharge from carrier with whom he made contract for carriage, and subsequent enforcing of ultimate liability with connecting carriers are matters within ruling of Interstate Commerce Commission for enforcing rights of carriers between themselves.

**9. Carriers ☞202—Attorney's fees may be recovered as general costs in action for overcharge on freight shipment (Interstate Commerce Act, §§ 8, 9, 22 [U. S. Comp. St. §§ 8572, 8573, 8595]).**

Under Interstate Commerce Act, §§ 8, 9, 22 (U. S. Comp. St. §§ 8572, 8573, 8595), considered together, attorney's fees may be recovered as part of costs of general recovery for overcharge on freight shipment.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Action by the W. L. Shepherd Lumber Company against the Atlantic Coast Line Railroad Company to recover an overcharge on freight shipment. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Chilton & McCoy, Hill, Hill, Whiting, Thomas & Rives, and James S. Parrish, all of Montgomery, for appellant.

The state courts have jurisdiction of actions for the recovery of overcharges against railroad companies. Pine Tree L. Co. v. Chicago R. Co., 123 La. 583, 49 So. 202; Hurt v. A. B. & A., 17 Ala. App. 241, 84 So. 631. Plaintiff's action is against the initial carrier. Ex parte L. & N., 201 Ala. 667, 79 So. 139; Great Northern v. Merchants' Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943. The question is not whether the rate

---

charged is reasonable, but what is the lawful rate. Great Northern v. Merchants' Elevator Co., supra; Nor. Pac. v. Solum, 247 U. S. 477, 38 S. Ct. 550, 62 L. Ed. 1221. Failure to restrict routing leaves all routes open to shippers desiring to use them. McGowan-Foshee L. Co. v. Andalusia, F. & G. R. Co., I. C. C. No. 15392. The terms of contracts are to be construed most strongly against the party who drew them. Lothrop v. Spokane R. Co. (D. C.) 10 F.(2d) 225. The defendant waived its rights under the original contract when it entered into the new one. Spangler v. Hobson, 212 Ala. 105, 105 So. 828. Plaintiff is entitled to recover a reasonable attorney's fee. 24 St. at L. 379, § 8. It is an item of cost and need not have been demanded in either count. Smith v. Witcher, 180 Ala. 102, 60 So. 391; Lothrop v. Spokane R. Co., supra; Meeker v. Lehigh Valley R. Co., 236 U. S. 412, 35 S. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691; Mills v. Lehigh Valley R. Co., 238 U. S. 473, 35 S. Ct. 888, 59 L. Ed. 1414.

Arrington & Arrington, of Montgomery, for appellee.

The court was without jurisdiction of the cause; the reasonableness of the routing is an administrative question within the jurisdiction of the Interstate Commerce Commission. Northern Pac. v. Solum, 247 U. S. 477, 38 S. Ct. 550, 62 L. Ed. 1221; Director Gen. v. Viscose Co., 254 U. S. 498, 41 S. Ct. 151, 65 L. Ed. 372. Tariff rules and regulations filed with the Interstate Commerce Commission are parts of the contract of shipment. Hartness v. Iberia R. Co. (D. C.) 297 F. 622; Hurt v. A. B. & A., 17 Ala. App. 241, 84 So. 631. The defendant is not responsible for a diversion made by its connecting carrier. Central R. Co. v. U. S., 257 U. S. 247, 42 S. Ct. 80, 66 L. Ed. 217; L. & N. v. Sloss Co. (C. C. A.) 295 F. 59; N. Y. & P. Co. v. R. R. Co., 280 Pa. 297, 124 A. 428; Chicago R. Co. v. Henderson (Tex. Civ. App.) 73 S. W. 36. The provision for attorney's fees is allowed only in suits in federal courts; such fee is not recoverable at common law. Interstate Com. Act. §§ 8, 9; Van Patten v. Chicago, M. & St. P. R. Co. (C. C.) 74 F. 981; Edmunds v. Ill. Cent. R. (C. C.) 80 F. 78; Nor. Pac. v. Pac. Coast L. Ass'n (C. C. A.) 165 F. 1; Union Pac. v. Oregon L. Ass'n (C. C. A.) 165 F. 13; Swift v. Phil. R. Co. (C. C.) 58 F. 858; Sheldon v. Wabash R. Co. (C. C.) 105 F. 785; Lowry v. Chicago, B. & Q. R. Co. (C. C.) 46 F. 83; Robert's Fed. Liab. Cor., § 285, p. 498.

THOMAS, J. The question of jurisdiction of the circuit court in the instant controversy was recognized by this court in Central of Ga. R. Co. v. Southern Ferro Concrete Co., 193 Ala. 108, 68 So. 981, Ann. Cas. 1916E, 376; N. C. & St. L. v. Gilliam, 212 Ala. 120, 101 So. 889; Ex parte L. & N. R. Co. (Oden-Elliott Lumber Co.), 201 Ala. 667, 79 So. 139; Oden-Elliott Lumber Co. v. L. & N. R. Co., 201 Ala. 700, 78 So. 989, and by the Court of Appeals in Hurt v. A., B. & A. Ry. Co., 17 Ala. App. 241, 84 So. 631.

For decisions in other state and federal courts, see, also, Pine Tree Lumber Co. v. Chicago, R. I. & P. Ry. Co., 123 La. 583, 49 So. 202; Tex. & Pa. R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 S. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Pennsylvania R. Co. v. Clark Bros. Coal Min. Co., 238 U. S. 456, 35 S. Ct. 896, 59 L. Ed. 1406, 1412; Sullivan v. Minn. & R. R. Ry. Co., 121 Minn. 488, 142 N. W. 3, 45 L. R. A. (N. S.) 612; Cent. R. Co. v. Mauser, 241 Pa. 603, 88 A. 791, 49 L. R. A. (N. S.) 92; Swift & Co. v. Hocking Valley Ry. Co., 93 Ohio St. 143, 112 N. E. 212, L. R. A. 1917E, 916. Where an administrative question for the Commission was involved, under the act of Congress, would affect the jurisdiction of the state court. Penn. R. Co. v. Puritan Coal Min. Co., 237 U. S. 121, 35 S. Ct. 484, 59 L. Ed. 867; Loomis v. Lehigh Valley Ry. Co., 240 U. S. 43, 36 S. Ct. 228, 60 L. Ed. 517; Texas & Pac. Ry. Co. v. Amer. Tie & Timber Co., 234 U. S. 138, 34 S. Ct. 885, 58 L. Ed. 1255; Central of Georgia R. Co. v. Southern Ferro Concrete Co., 193 Ala. 108, 68 So. 981, Ann. Cas. 1916E, 376.

[1] The question for decision is not a legislative or administrative function, but merely that of the determination of the fact of whether the reasonable rate prescribed by the Commission had been exacted of the shipper. If an unreasonable or discriminatory rate was collected, the question of fact is to determine what the lawful and prescribed commission rate was, as the basis of admeasurement of the amount of recovery for the overcharge. These questions of fact may be the subject of consideration in state courts as in the courts of the general government. The just distinction, or test for jurisdiction in such matters, was made or declared in Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U. S. 285, 291, 42 S. Ct. 477, 479, 66 L. Ed. 943, 948, where it is held:

"Whenever a rate, rule or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Commission. Sometimes this is required because the function being exercised is in its nature administrative in contradistinction to judicial. But ordinarily the determining factor is not the character of the function, but the character of the controverted question and the nature of the inquiry necessary for its solution. To determine what rate, rule or practice shall be deemed reasonable for the future is a legislative or administrative function. To determine whether a shipper has in the past been wronged by the exaction of an unreasonable or discriminatory rate is a judicial function. Preliminary resort to the Commission is required alike in the two classes of cases. It is required because the inquiry is essentially one of fact and of discretion in technical matters, and uniformity can be secured only if its determination is left

to the Commission. Moreover, that determination is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable; and such acquaintance is commonly to be found only in a body of experts. But what construction shall be given to a railroad tariff presents ordinarily a question of law which does not differ in character from those presented when the construction of any other document is in dispute."

That is to say, the jurisdiction of the state court was sustained. The opinion concludes with the observation:

"In the brief and argument on the merits, it was also asserted that some recent decisions of this court are in conflict with the rule declared and applied in the American Tie & Timber Co. Case, supra, and the Loomis [295] Case, supra. If in examining the cases referred to there is borne in mind the distinction above discussed between [296] controversies which involve only questions of law and those which involve issues essentially of fact or call for the exercise of administrative discretion, it will be found that the conflict described does not exist and that the decisions referred to are in harmony also with reason."

The many cases referred to by Mr. Justice Brandeis include that of Northern Pac. Ry. Co. v. Solum, 247 U. S. 477, 38 S. Ct. 550, 62 L. Ed. 1221, and are contained in the note to 66 L. Ed. 948.

In cases not involving the reasonableness of a rate or an administrative discretion, the jurisdiction of the courts is sustained without resort to the Commission; that is to say, where the question involved is solely one of construction of a tariff, or otherwise a question of law, and not one of administrative discretion. Louisville & N. R. Co. v. F. W. Cook Brewing Co., 223 U. S. 70, 84, 32 S. Ct. 189, 56 L. Ed. 355, 359; Pennsylvania R. Co. v. International Coal Co., 230 U. S. 184, 196, 33 S. Ct. 893, 57 L. Ed. 1446, 1451, Ann. Cas. 1915A, 315; Pennsylvania R. Co. v. Puritan Coal Min. Co., 237 U. S. 121, 134, 35 S. Ct. 484, 59 L. Ed. 867, 874; Eastern R. Co. v. Littlefield, 237 U. S. 140, 35 S. Ct. 489, 59 L. Ed. 878; Illinois C. R. Co. v. Mulberry Hill Coal Co., 238 U. S. 275, 35 S. Ct. 760, 59 L. Ed. 1306; Pennsylvania R. Co. v. Sonman Shaft Coal Co., 242 U. S. 120, 37 S. Ct. 46, 61 L. Ed. 188; Pennsylvania R. Co. v. Kittanning Iron & Steel Mfg. Co., 253 U. S. 319, 40 S. Ct. 532, 64 L. Ed. 928. See, also, Swift & Co. v. Hocking Valley R. Co., 243 U. S. 281, 37 S. Ct. 287, 61 L. Ed. 722; St. Louis, I. M. & S. R. Co. v. J. F. Hasty & Sons, 255 U. S. 252, 256, 41 S. Ct. 269, 65 L. Ed. 614, 616; Hite v. Central R. Co., 96 C. C. A. 326, 171 F. 372; Gimbel Bros. v. Barrett (C. C. A.) 215 F. 1004; Id. (D. C.) 218 F. 880; Id., 141 C. C. A. 379, 226 F. 623; National Elevator Co. v. Chicago, M. & St. P. R. Co., 158 C. C. A. 558, 246 F. 588; J. C. Francesconi & Co. v. Baltimore & O. R. Co. (D. C.) 274 F. 687, 691. Compare Empire Re-

fineries v. Guaranty Trust Co. (C. C. A.) 271 F. 668; Kansas City Southern R. Co. v. Tonn, 102 Ark. 20, 26, 143 S. W. 577; Western & A. R. Co. v. White Provision Co., 142 Ga. 246, 82 S. E. 644; Gustafson v. Michigan C. R. Co., 296 Ill. 41, 129 N. E. 516; Wolverine Brass Works v. Southern P. Co., 187 Mich. 393, 396, 153 N. W. 778; Reliance Elevator Co. v. Chicago, M. & St. P. R. Co., 139 Minn. 69, 165 N. W. 867; St. Louis, S. F. & T. R. Co. v. Roff Oil & Cotton Co., 61 Tex. Civ. App. 190, 192, 128 S. W. 1194; Southern P. Co. v. Frye & Bruhn, 82 Wash. 9, 143 P. 163.

In Northern Pac. Co. v. Solum, 247 U. S. 477, 38 S. Ct. 550, 62 L. Ed. 1221, the decision was to the effect:

"Jurisdiction of a suit by a shipper to recover amounts paid for shipments over an interstate route between two points, both within the state, in excess of what would have been payable under the state law if the shipments had been made over an intrastate route, may not be assumed in advance of a determination by the Interstate Commerce Commission of the administrative question as to the reasonableness of the carrier's practice, because of the grades of the two lines, in routing west-bound shipments over the longer interstate route, and east-bound shipments over the shorter intrastate route."

The instant case is within the foregoing rule sustaining the jurisdiction of the circuit court; the issue presented being that not involving the exercise of administrative discretion. The trial court correctly sustained demurrers to the plea to the jurisdiction, since the case for decision is merely that calling for the construction of a contract, evidenced by the bill of lading, to determine what the true or commission rate was that should have been exacted of the shipper. This was within the test or rule of the case of G. N. Ry. Co. v. Merchants' Elevator Co., 259 U. S. 285, 291, 42 S. Ct. 477, 66 L. Ed. 943, where Mr. Justice Brandeis makes the true distinction, as we have hereinbefore indicated.

The case being tried by the court without a jury, the question recurs, was the evidence for plaintiff such as that a new trial should have been granted? Be it remembered that the questions are of misrouting, not a reasonable practice of the carrier to so route. The announcements of Northern Pac. Ry. v. Solum, supra, are without application.

[2] We have only the determination of what was the lawful rate under the instant facts. When there is no specific routing by the shipper, the general rule is that it is the duty of the carrier to ship or carry (1) by the cheapest and most available route, (2) and to charge the lowest rate that has application to such shipment. The instructions of the shipper on the initial or original bill of lading—"of date of May 27, 1921, at La Pine, Alabama, from J. P. Felton Lumber Company, consigned by W. L. Shepherd

Lumber Company. Destination Roanoke, State of Va. County of ———, Route WSSB—N&W"—being interpreted by the evidence (witness Copeland) meant "Winston-Salem Southbound Ry. and Norfolk & Western Ry. to Roanoke." The diverting order was as follows:

"That this shipment of lumber was shipped from La Pine, Alabama, on May 27, 1921, consigned to W. L. Shepherd Lumber Company, Roanoke, Va.; routed by Winston-Salem South-Bound and Norfolk & Western to Roanoke. That the W. L. Shepherd Lumber Company by telephone and by letter requested the Atlantic Coast Line Railroad to divert said car to Ira A. Crouse, Perth Amboy, N. J., Pennsylvania delivery, on basis of through rate. That said letter was sent to the Atlantic Coast Line Railroad Company through the United States mail, properly addressed, with postage prepaid. Plaintiff then introduced a carbon copy of said letter in words and figures as follows:

"Copy.

" 'June 13, 1921.

" 'Mr. Justin Kuss, DFA ACLRR Montgomery, Ala.—Dear Sir: Diverting ACL No. 46227. Confirming telephone conversation date with your office. We enclose herewith La Pine, Ala., lading dated May 27th covering above car consigned to ourselves Roanoke, Va., routed WSSB N&W. Please promptly take up and divert to: Ira R. Crouse, Perth Amboy, N. J. Penna Delivery on basis of through rate, letting us have corrected lading promptly and oblige, Yours very truly, W. L. Shepherd Lumber Co., Inc., by Traffic Manager. RCC AR AM.'

"That plaintiff received an answer to said letter, dated June 23, 1921, acknowledging receipt of the diversion order and inclosing exchange bill of lading. Witness identified the said letter received from the Atlantic Coast Line Railroad, and plaintiff introduced it in evidence in words and figures as follows:

" 'Atlantic Coast Line Railroad Company.

" 'Montgomery, Alabama, June 23, 1921.

" 'Messrs. W. L. Shepherd Lumber Company, Montgomery.—Gentlemen: Yours 13th, requesting us to divert ACL 46277 consigned to yourselves at Roanoke, Va., to Ira R. Crouse, Perth Amboy, N. J., Pennsylvania delivery. I beg to advise that this car has been diverted as requested and exchange bill of lading is handed you herewith. Yours very truly, Justin Kuss.' "

[3] Since the shipper did not specify, but merely asked diversion and "delivery on basis of through rate," they were entitled to have the same moved by the cheapest available route and at the lowest rate that applied thereto. The preponderance of the evidence by rate experts was to the effect that to this shipment, and diversion shipment and delivery diversion route 18 (water competitive route 18) was applicable, and that the lawful rate was 48 cents. Mr. Caskie qualified as an expert and testified:

"That if a shipment was made on May 27, 1921, or thereabouts, on the Atlantic Coast Line Railroad from La Pine, Ala., to Roanoke, Va., and to an order issued by the shipper to divert that shipment to Ira A. Crouse, Perth Amboy, N. J., Pennsylvania delivery, on basis of through rate, that rate would be 48 cents. That if the bill of lading or diversion order contained no routing directions the railroad should route by the cheapest available route, which was via Norfolk, Pinners Point, and Portsmouth, and that the tariff permits movement via the Norfolk & Western and via the Winston-Salem Southbound. That if a shipment was made direct from La Pine, Ala., to Perth Amboy, N. J., Pennsylvania delivery, the same routing and the same rate would apply. In other words, that the fact of diversion makes no difference. If the shipment was made originally to Roanoke and then diverted on the basis of through published rate, that means on the same basis as if the shipment had been originally from La Pine, Ala., to Perth Amboy, N. J., there were no restrictions whatever in the tariff on the routing up to Norfolk, Va. That the restriction on page 93 of the tariff does not apply to shipments beyond Norfolk, Portsmouth, and Pinners Point, but applies only on shipments going to those points as final destinations. Counsel for defendant moved to exclude this testimony on the grounds that it called for the opinion of a witness of his construction of the tariff, which motion was sustained by the court. Counsel for plaintiff duly excepted. Witness testified: That if the tariff contained no restrictions as to routing up to Norfolk there could be no restrictions other than a 'reasonable route.' That a route via Roanoke would be a reasonable route. That by reasonable routing is meant a routing that can be used, according to the tariff, has been used, and is not restricted, and is fairly practicable. That it does not mean the shortest available route. That a route may be reasonable, although it is a longer route than other possible routes. That the Winston-Salem South-Bound participates in the rate through Roanoke, and therefore it is an open route for shipments moving that way. To witness' personal knowledge the 48-cent rate has been protected by this route. That there is no back haul involved in this route."

In McGowin-Foshee Lumber Co. v. Andalusia, Florida & Gulf, etc., Interstate Commerce Commission, No. 15492, pp. 451, 452, on January 12, 1925, the Commission in a mimeographed opinion, on file in this library, said that it had long followed the rule, in tariff construction, that if carriers participated in a tariff carrying routes which they did not intend to be used they had to expressly restrict their use by proper notation in the tariff. It is said:

"The view has been long followed in tariff construction that if carriers participating in a tariff do not intend rates to apply over certain routes they must restrict their use by proper notation in the tariff. Failure to restrict routing leaves all routes open should shippers desire to use them. The rate from Louisville not being restricted to the more direct route through Cincinnati, was applicable via East St. Louis. Under rule 5 (b) of Tariff Circular 18A the Louisville combination, which is lower than a combination on Henderson, was applicable without the necessity of hauling the shipments to Louisville and back to the junction point." 95 Interst. Com. Com'n R. 451.

[4] That case is similar to the case at bar. There the shipments were from Falco, Ala., to Manitou Beach and Northville, Mich., via Louisville. The shipper designated a route to Louisville through East St. Louis, and the carrier claimed the most direct route to Louisville was by Cincinnati and that the lower rate did not apply. The Commission, construing the tariff, held that, the rate to Louisville not being restricted in the tariff to the most direct route through Cincinnati, was applicable via East St. Louis. Such is the situation of instant case. Route 18 is explained in the tariff as via the Norfolk Gateway. There is no restriction on the routing to Norfolk, and any reasonable routing to that point, though not the most direct, is permissible. That the routing by way of Roanoke was reasonable is shown by the testimony of the experts. See Mr. Caskie's testimony which we have above set out.

"Witness was asked to look at page 93 of the Tariff and read what the tariff says concerning the nonapplicability of these rates. The witness read as follows:

Exceptions to Application of Rates.

| From | Via | To | | Exceptions |
|------|-----|-----|-----|-----------|
| | Atlantic Coast Line R. R. | Norfolk | Va. | will not apply via Winston-Salem South-Bound Ry. |
| | | Petersburg | Va. | |
| | | Pinners Point | Va. | |
| | | Portsmouth | Va. | |
| | | Port Norfolk | Va. | |
| | | Richmond | Va. | |
| | | Suffolk | Va. | |

"Witness being asked whether it does not appear from this that these rates will not apply from all points via the Coast Line to Norfolk, Pinners Point, Portsmouth, and other points via the Winston-Salem South-Bound Railroad, witness replied: 'It does to the points you name.' That this shipment was routed via Winston-Salem Southbound up to Roanoke only and that even after diversion it was not destined to any of the points mentioned in the exception on page 93 of the Tariff but was destined to points beyond those. Witness testified that the tariff authority upon which he requested the diversion of the car to Perth Amboy, N. J., was ACL Railroad Tariff G. F. O. No. 8723, I. C. C. No. B-800, the original tariff becoming effective March 12, 1919, which tariff covered diversions at the time the diversions in question were requested. Being asked whether the privilege of diverting was specifically set out in the tariff referred to, witness replied that it was. Being asked whether that privilege did not apply only to shipments diverted on the rails of the Atlantic Coast Line, witness replied that he did not so understand it and that he did not know where the car actually was at the time the request for diversion was made. Witness was requested to read paragraph C of rule 4 of the tariff referred to, and read as follows:

" 'On "straight" consignments, the original bill of lading should be surrendered, or other proof of ownership established. On shipments consigned "to order," original bill of lading should be surrendered for endorsement or exchange, or in its absence satisfactory bond of indemnity executed in lieu thereof, or other approved security given at the time the diversion or reconsignment order is placed.

" 'Diversions or Reconsignment beyond Rails of These Lines.—When diversion or reconsignment is requested after shipment has passed out of possession of these lines, or when request is received too late for these lines to effect the change desired, such request will be transmitted to direct connecting carrier to which shipment was delivered, when the responsibility of these lines will end; and the shipment will be subject to rules of the carrier on whose rails the diversion or reconsignment is accomplished, except as per section A of this rule.'

"Witness was thereupon requested to read into the record, in reference to diversion, the last clause of note 19, p. 91, in Glenn's Tariff, and he read as follows:

" 'In the absence of specific provisions in this tariff to the contrary, property destined to points beyond the tracks of roads named herein as issuing lines is entitled to such privileges and will be subject to such charges as provided in tariffs published and lawfully on file with the Interstate Commerce Commission, of the carriers granting the privileges or performing the services.

" 'The granting of the privileges and performances of the services described in this note shall be entirely upon the responsibility and at the cost of the carrier granting the privileges and performing the services, and without requiring the participation therein of any other carrier in the absence of authority therefor from such other carrier.' "

[5, 6] It will be noted that this shipment was routed by the shipper via the Winston-Salem Southbound, but the shipment was not to Norfolk, but was to a point beyond Norfolk, namely, Perth Amboy, N. J. Mr. Caskie testified that this restriction did not apply to shipments via Norfolk and beyond, and only to shipments the final destinations of which were Norfolk, or one of the points named. An expert familiar with the construction of the professional or expert terms employed in a tariff may decipher same. And the overwhelming weight of expert testimony was that 48 cents was the lawful rate (water competitive rate) applicable through and beyond Norfolk, and that said shipment could and should have gone through Norfolk. It is a familiar principle of construction of contracts, if the terms are open to construction, the same will be construed most strongly against the party who drew the contract. Lothrop v. Spokane, etc., Ry. Co. (D. C.) 10 F. (2d) 225. Mr. Caskie's construction is correct. And appellee introduced no evidence in support of its construction of this clause, or that this clause meant other than what it says. The witnesses, Copeland, Caskie, Brown, Kirtland, Shepherd, and Shine, testified that the proper rate on the shipment was 48 cents; and Henderson said the rate was 50½ cents. And this witness stated on cross-examination that the cheapest rate on a car of yellow pine from La Pine to Perth Amboy, N. J., via Atlantic Coast Line, would be 48 cents via Norfolk. In addition to this preponderance of evidence was offered a certi-

fied copy of the tariff, the basis of the foregoing expert evidence.

[7] Defendant contended at the trial that the rule contained in the Diversion Tariff, set out in full in the transcript, is a defense; that the rule gave the defendant the right to refuse to divert, and to merely act as plaintiff's agent in securing a bill of lading from the Norfolk & Western Railroad for the plaintiff. The fact is that this rule was not relied upon by the transportation company. If it had done so, it would have been relieved of responsibility and plaintiff would have had a contract right as against the Norfolk & Western Railroad, but defendant issued instead its own exchange bill of lading. It did more than its rule declared or required. Mr. Shephard, the traffic agent for Alabama of the Louisville & Nashville Railroad Company, said:

"That on a shipment of yellow pine lumber moving from La Pine, Ala., to Roanoke, Va., on May 27, 1921, and from that point diverted to Perth Amboy, N. J., the rate via the cheapest route was 48 cents per 100 pounds, under Agent Glenn's Tariff No. 3, I. C. C. A-192. That the route via Norfolk carried the lowest available rate. That on such a shipment it would not be necessary for the shipper to state in his diversion order that he wanted the shipment to go through Norfolk. That in the absence of specific routing by the shipper the 48 cents rate would apply.

"Upon cross-examination witness testified that he considered the route through Roanoke a reasonable route under the circumstances.

"Upon redirect examination witness testified that when a railroad receives a shipment to a point beyond its lines, and it is requested to divert it, it is not customary for the initial carrier to issue its own exchange bill of lading; that the custom is for the initial carrier, under such circumstances, to procure an exchange bill of lading from the diverting carrier."

The defendant is bound by its new contract of June 13, and other contrary or equivocal terms of the original contract of May 27, if more favorable to the defendant, were waived thereby. There is analogy to Spangler v. Hobson, 212 Ala. 105, 101 So. 828, where Mr. Justice Gardner said:

"* * * In the instant case gratuitously undertook to remedy the condition, and the trial court submitted the cause to the jury upon the principle that when a landlord, though gratuitously, undertakes to make repairs he is liable for injuries resulting from negligence of himself or servants in making such repairs. Bains v. Dank, 199 Ala. 250, 74 So. 341; 1 Tiffany on Landlord and Tenant, pp. 608, 609, and authorities supra."

[8] In Ex parte L. &. N. R. Co. (Oden-Elliott Lumber Co.) 201 Ala. 667, 79 So. 139, this court declared that when a shipper designated a route at a certain through rate, and the goods were deflected over another route, thereby increasing the charges, that the remedy of the shipper was not against the carrier to which the goods were deflected. The shipper may sue the carrier with whom he made the contract for the carriage and the subsequent enforcing of ultimate liability with connecting carriers are matters within the ruling of the Commission for the enforcing of the rights of carriers between themselves. With this the shipper has no concern. And appellant's remedy was not against the Norfolk & Western Railroad.

Two counts of the complaint claim a reasonable attorney's fee. Section 22 of Interstate Commerce Act (24 Stat. at L. 379, 387 [U. S. Comp. St. § 8595]), preserves or declares, among other things, the continuance of common-law remedies saying:

"Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies," etc.

The attorney's fee is provided by section 8 (U. S. Comp. St. § 8572), as follows:

"That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

[9] This is the unqualified right to attorney's fee given as indicated, and this right must not be confused with the remedies provided by procedures in the several forms indicated. The remedy succeeds the given right or failure of duty in the premises. When sections 8, 9, and 22 are considered in pari materia, it is evident: That section 9 (U. S. Comp. St. § 8573), was not a restriction on section 22 preserving the remedies then existing at "common law or by statute." 24 U. S. Stat. at L. pp. 382, 387. The attorney's fee was a part of the "costs" of the general recovery in the premises, and became a subject of consideration under the several counts for a violation of the act of Congress. That the item of "reasonable counsel or attorney's fee" is required by section 8 "to be fixed by the court in every case of recovery." It is required by the statute that it "shall be taxed and collected as part of the costs in the case." 24 U. S. Stat. at L. p. 382, § 8. See case of Lothrop v. Spokane, P. & S. R. Co. (D. C.) 10 F. (2d) 225. In Meeker v. Lehigh Valley R. Co., 236 U. S. 412, 432, 35 S. Ct. 328, 336, 59 L. Ed. 644, 658 (Ann. Cas. 1916B, 691), it was declared that:

"Services for which an attorney's fee is to be taxed and collected are those incident to the action in which the recovery is had." Mills v.

Lehigh Valley R. Co., 238 U. S. 473, 35 S. Ct. 888, 59 L. Ed. 1414.

In the Lothrop Case, supra, as in the instant case, no evidence was introduced by defendant to rebut the evidence for plaintiff as to what a reasonable attorney's fee would be; and the court there allowed the fee according to the plaintiff's testimony.

The judgment of the circuit court is reversed and remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.