**NORTHERN PAC. RY. CO.**

v.

**UNITED STATES (three cases).**

Nos. 14924, 14925, 14926.

United States Court of Appeals, Eighth Circuit.

June 10, 1954.

Frank S. Farrell, Washington, D. C., (M. L. Countryman, Jr., and Earl F. Requa, St. Paul, Minn., on the brief), for appellant.

Alan S. Rosenthal, Atty., Department of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., George E. MacKinnon, U. S. Atty., St. Paul, Minn., and Paul A. Sweeney, Atty., Department of Justice, Washington, D. C., on the brief), for appellee.

Before SANBORN, THOMAS and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

These are appeals by the Northern Pacific Railway Company from judgments entered in three actions brought by it on behalf of itself and connecting rail carriers against the United States, under 28 U.S.C.A. § 1346(a) (2), to recover unpaid balances of freight charges claimed to be due for the transportation of 37 carloads of ethyl alcohol shipped in April, 1943, by Defense Supplies Corpo-

ration from New Orleans and Harvey, Louisiana, and consigned to the War Shipping Administration as principal, account of Soviet Government Purchasing Commission at North Pacific Coast destinations.

The alcohol in suit was the property of the Defense Supplies Corporation, an agency of the federal government. When shipped, the alcohol was withdrawn from bonded storage and loaded in drums. The United States Treasury Department issued a withdrawal tax-free permit, and the alcohol, from the time of its withdrawal, remained in the custody of the United States until it was delivered to the vessel at bill of lading destination for export. The alcohol had been requisitioned by the Government of the Union of Soviet Socialist Republics for use by its Army, under the Lend-Lease Program, and moved tax free.

The applicable tariff (Trans-Continental Freight Bureau West-Bound Tariff No. 4–T, Agent L. E. Kipp, I.C.C. No. 1487) published two rates covering ethyl alcohol. Item No. 1497 of the tariff published a rate per 100 pounds from each of the origins to each of the destinations involved on "Alcohol N.O.S. [not otherwise specified in any other item of the tariff], in glass, earthernware or metal cans in boxes or in bulk in barrels." Item No. 1563 of the tariff published a lower rate per 100 pounds on "Alcohol (other than denatured or wood), *in bond,* in earthenware or glass packed in boxes, in metal cans in boxes, or in bulk in barrels."

All of the shipments in suit were made on commercial bills of lading which described each shipment as "100—54 Gal. Drums Alcohol N.O.I.B.N. Tax Free." The letters "N.O.I.B.N." mean "not otherwise indexed by name in Western Classification nor otherwise specified in any other item of this tariff carrying carload commodity rates between the same points on that article irrespective of package requirement." There was no item in the tariff naming alcohol N.O.I.B.N. as a commodity.

The Railway Company brought these actions claiming that the lawful tariff rate as prescribed by Item No. 1497 was $1.49 per hundredweight on "alcohol N.O.S.", less applicable land grant deductions, but that the Defense Supplies Corporation had paid at the rate of only $1.23 per hundredweight, applicable to alcohol "in bond" under Item No. 1563 of the tariff, less applicable land grant deductions. The Government denied that Item No. 1497 applied to the shipments in suit, and asserted that the applicable rate was that prescribed by Item No. 1563, or $1.23 per hundredweight, less applicable land grant deductions. The Government, in the third of these actions, counterclaimed for overcharges on the transportation of 13 carloads of ethyl alcohol shipped in 1943 under identical circumstances by the Defense Supplies Corporation from New Orleans to Tacoma, Washington, upon which the Corporation had prepaid the freight charges at the higher rate prescribed by Item No. 1497 without land grant deductions.

The cases were consolidated and tried to the District Court without a jury upon a stipulation of facts and the testimony of two tariff experts. The sole controverted issue was whether Item No. 1497 or Item No. 1563 of the tariff was applicable to the shipments in suit, including those involved in the Government's counterclaim. It was agreed that if, in the first of these actions, it was determined that the legal rate was that provided by Item No. 1497, the Railway Company would be entitled to judgment for $473.-68, including reconsigning charges of $38.24, but that if Item No. 1563 was applicable the Railway Company should have judgment for reconsigning charges only. It was also agreed that if Item No. 1497 of the tariff was held applicable, the Railway Company was entitled to judgment, in the second action, for $1,806.-50, but that otherwise it would be entitled to no recovery. It was also stipulated that if Item No. 1497 was applicable, the Railway Company, in the third action, was entitled to a judgment of

$1,598.62 plus reconsigning charges of $69.93, but that if Item No. 1563 was applicable the Government was entitled to $00.40 and the Railway Company to $69.93 for reconsigning charges. It was also stipulated that if, in the third action, it was determined that the tariff rate on the shipments upon which the Government's counterclaim was based was that specified in Item No. 1497, the Government would be entitled to judgment for $3,004.46, but that if Item No. 1563 was applicable the judgment in favor of the Government should be $4,418.91.

The Assistant General Freight Agent of the Railway Company, as an expert witness for it, testified that the applicable tariff rate was that specified in Item No. 1497 on alcohol N.O.S., since Item No. 1563 covers alcohol in bond, and the alcohol in suit was not in bond; that "an 'in bond' shipment as pertains to alcohol is a shipment from a bonded distillery or warehouse to another bonded distributor or warehouse"; that the shipments in suit were tax free but that there was nothing on the billing indicating that they were moved in bond, and consequently the applicable rate would be the alcohol N.O.S. rate as published in Item No. 1497.

The Chief of the Traffic Section, Contract and Commodity Division, Reconstruction Finance Corporation, was called as an expert by the Government. He testified, in substance, that the term "in bond" as used in the tariff on alcohol meant "tax free"; that the basis for the differential in rates between shipments of alcohol "in bond", which moved tax free, and those upon which the tax was paid was that when loss occurred during transportation of tax-free alcohol the liability of the carrier was far less than its liability for loss of tax-paid alcohol. The witness testified that railway tariffs issued in southern territory and in "Official Territory" refer to alcohol "in bond" followed by "(free of Internal Revenue tax)". To substantiate this statement, the Government introduced a number of such tariffs.

In summary, the Government's expert testified:

"The term 'in bond' has acquired a customary and usual understanding among shippers and carriers of alcohol. The term 'in bond' as used in railroad tariffs is generally accepted as meaning taxable alcohol upon which the tax has not been paid but which is in transportation and in the protective custody of the Government."

The District Court concluded that the words "in bond" as used in Item No. 1563 of the tariff meant "tax free" and that the applicable tariff rate was as stated in that Item. Judgments were entered accordingly.

The Railway Company has appealed, contending, in substance, that under the competent evidence in the case the finding of the District Court that the "in bond" rate specified in Item No. 1563 of the tariff was applicable, is "clearly erroneous" and is based upon a conclusion that that rate was reasonable, a question within the exclusive jurisdiction of the Interstate Commerce Commission.

It seems apparent that the question whether the words "alcohol in bond" as used in the tariff had by custom and usage come to mean "tax-free alcohol" was one of fact. In the case of Reconstruction Finance Corporation v. Spokane, P. & S. Ry. Co., 170 F.2d 96, 99, which dealt with a similar problem, the Court of Appeals for the Ninth Circuit, in holding that tax-free alcohol shipped by the Government was not to be classified as "alcohol in bond", said, in effect, that only through general practice or custom could the term "in bond" be given the meaning of "tax free". In that case there was no competent evidence that the term "in bond" had, through custom or usage, acquired an extraordinary meaning, and therefore the construction of the tariff presented purely a question of law.

It is our understanding that when it is contended that the words of a railway

tariff of an interstate carrier are used in a peculiar or extraordinary sense, the preliminary determination of their meaning must be made by the Interstate Commerce Commission.

In Great Northern Railway Company v. Merchants Elevator Company, 259 U.S. 285, 291–292, 42 S.Ct. 477, 479, 66 L.Ed. 943, Mr. Justice Brandeis, speaking for the Supreme Court, said:

"When the words of a written instrument are used in their ordinary meaning, their construction presents a question solely of law. But words are used sometimes in a peculiar meaning. Then extrinsic evidence may be necessary to determine the meaning of words appearing in the document. This is true where technical words or phrases not commonly understood are employed, or extrinsic evidence may be necessary to establish a usage of trade or locality which attaches provisions not expressed in the language of the instrument. Where such a situation arises, and the peculiar meaning of words, or the existence of a usage, is proved by evidence, the function of construction is necessarily preceded by the determination of the matter of fact. Where the controversy over the writing arises in a case which is being tried before a jury, the decision of the question of fact is left to the jury, with instructions from the court as to how the document shall be construed, if the jury finds that the alleged peculiar meaning or usage is established. But where the document to be construed is a tariff of an interstate carrier, and before it can be construed it is necessary to determine upon evidence the peculiar meaning of words or the existence of incidents alleged to be attached by usage to the transaction, the preliminary determination must be made by the Commission; and not until this determination has been made, can a court take jurisdiction of the controversy. If this were not so, that uniformity which it is the purpose of the Commerce Act to secure could not be attained. For the effect to be given the tariff might depend, not upon construction of the language—a question of law—but upon whether or not a particular judge or jury had found, as a fact, that the words of the document were used in the peculiar sense attributed to them or that a particular usage existed."

See, also, Texas & Pacific Railway Co. v. American Tie & Timber Co., Ltd., 234 U.S. 138, 34 S.Ct. 885, 58 L.Ed. 1255.

So, here, the preliminary determination of the meaning of the term "in bond", which term the Government contends and the District Court decided had by custom and usage acquired the meaning of "tax free", must, we think, be made by the Interstate Commerce Commission, and not until that preliminary determination has been made can the District Court decide these cases in so far as they depend upon a construction of the tariff. It is conceded that the Railway Company is entitled to judgments for its reconsigning charges, which are not in dispute.

The judgments appealed from, in so far as they are based upon a determination that Item No. 1563 of the tariff prescribes the applicable rate for the shipments of alcohol in suit, are vacated, and the cases are remanded to the District Court with directions that, before attempting to finally dispose of the cases, it afford the parties a reasonable opportunity to procure from the Interstate Commerce Commission the necessary preliminary determination of the meaning of the term "in bond" as used in Item No. 1563 of the applicable tariff.

THOMAS, Circuit Judge (dissenting).

The court holds that the district court was without jurisdiction to hear and determine the issues presented. I cannot agree with this conclusion; and, since the decision will be important for both shippers and carriers in interstate commerce, I shall state briefly my reasons for dissenting.

In this instance the actions were brought by the plaintiff Railway Company. It invoked the jurisdiction of the court; and at no time did it raise the question of jurisdiction, either in the district court or in this court.

28 U.S.C.A. § 1337 provides that "The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce * * *."

49 U.S.C.A. § 3(2) provides for the payment of rates and charges on shipments, and 49 U.S.C.A. § 6(7) requires carriers to file and publish rates and charges to be paid by shippers. And a suit to recover an alleged freight undercharge arises under a law regulating commerce. Louisville & N. R. R. Co. v. Rice, 247 U.S. 201, 202, 203, 38 S.Ct. 429, 62 L.Ed. 1071. And see Bernstein Bros. Pipe & Machinery Co. v. Denver & R. G. W. R. Co., 10 Cir., 193 F.2d 441.

The language of the Supreme Court in Great Northern Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 294, 42 S.Ct. 477, 480, 66 L.Ed. 943, relied upon by the court, is applicable here, I think, where it is said: "Here no fact, evidential or ultimate, is in controversy, and there is no occasion for the exercise of administrative discretion. The task to be performed is to determine the meaning of words of the tariff which were used in their ordinary sense and to apply that meaning to the undisputed facts. That operation was solely one of construction; and preliminary resort to the Commission was, therefore, unnecessary."

It is the law, also, that "A rate tariff of a railroad, being written by the railroad, must be so construed that all ambiguities or reasonable doubts as to its meaning must be resolved against the railroad." United States v. Interstate Commerce Commission, 91 U.S.App.D.C. 178, 198 F.2d 958. And see Union Wire Rope Corporation v. Atchison, T. & S. F. Ry. Co., 8 Cir., 66 F.2d 965.

When the reasonableness of the rate or discrimination is not involved, the court has jurisdiction. Louisville & Nashville R. R. Co. v. Cook Brewing Co., 223 U.S. 70, 32 S.Ct. 189, 56 L.Ed. 355. And where a matter is free from doubt there is no occasion to apply to the Commission for a construction of the tariff. St. Louis, I. M. & So. Ry. v. H. F. Hasty & Sons, 255 U.S. 252, 256, 41 S.Ct. 269, 65 L.Ed. 614.

At the time the words "in bond" were first used in a tariff they meant alcohol on which the tax had not been paid (in the language of the government, the carriers and the shippers, they meant "tax free"), and in case of loss in transit the carrier paid only the value of the alcohol without including the internal revenue tax. That has always been the meaning of "in bond" as used in the tariffs, and the evidence to that effect is undisputed. Under the circumstances of this case as shown by the evidence it seems clear to me that the trial court had jurisdiction of the subject matter and of the parties thereto.

I think the judgment appealed from should be affirmed.